IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| THE SPRINGFIELD BRANCH, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et. al., | ) ) ) ) |
| Plaintiffs, | ) No. 00-3136 ) |
| v. | ) ) |
| CITY OF SPRINGFIELD, ILLINOIS, et. al. | ) ) |
| Defendant, and | ) ) |
| POLICE BENEVOLENT AND PROTECTIVE ASSOCIATION, UNIT NO. 5 and INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 37, | ) ) ) ) ) |
| Third Party Defendants. | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO ENFORCE CONSENT DECREE AND APPLICATION FOR AN ORDER TO SHOW CAUSE AND RESPONSE TO MOTION OF PLAINTIFFS JAMES E. JOHNSON AND TARA HOLDER TO ENFORCE CONSENT DECREE AND FOR RULE TO SHOW CAUSE**

**NOW COMES** Defendant, by and through its attorneys, Jenifer L. Johnson, Corporation Counsel, and Frank Martinez, Assistant Corporation Counsel, submits its response to the Motion to Enforce and Application for An Order to Show Cause and states as follows:

**STANDARD OF REVIEW**

To prevail on a motion for civil contempt, "a party must prove by 'clear and convincing evidence' that the opposing party violated a court order." *Goluba v. School Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995)(quoting *Stotler and Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir.

1989)); *United States v. McDahl*, 257 F.3d. 694, 699 (7th Cir. 2001). To hold a party in contempt, the district court "must be able to point to a decree from the court which 'set(s) forth in specific detail an unequivocal command' which the party in contempt violated." *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir. 1986) (quoting *H.K. Porter Co. v. National Friction Prods.*, 568 F.2d 24, 27 (7th Cir. 1977)); See also *Stotler and Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989)(a party can only be held in contempt for behavior clearly prohibited by the court order within its four corners).

### THE NAACP VIOLATED THE CONSENT DECREE BY NOT CONFERRING IN GOOD FAITH WITH THE CITY IN ORDER TO RESOLVE THE NAACP'S ALLEGED DISPUTE WITH THE CITY AND BY REFUSING TO ACCEPT BACKGROUND INVESTIGATIONS IT REQUESTED.

The NAACP, through its attorney, David L. Rose, failed to confer with the City in good faith in order to resolve alleged violations of the Consent Decree. Paragraph 24 of the Consent Decree requires "[i]n the event of a dispute over the interpretation of or compliance with the terms of this Decree, the parties shall exchange information and confer in good faith in an effort to resolve the dispute before initiating any adversarial proceeding before the Court." Despite this requirement, the NAACP through its attorney failed to do so. In addition, A. Courtney Cox entered his appearance in this case, but failed to adhere to this requirement by his failure to contact the City in order to resolve any of his alleged disputes. In fact, Mr. Cox indicated in the Motion he filed before this

Court that he relied on his assumption that Mr. Rose conferred in good faith with counsel for the City. Mr. Cox was not involved in any discussions held with Mr. Rose regarding the consent decree, nor did he even inform the City that he was representing any of the former plaintiffs until he filed his appearance in this case. In fact, Mr. Rose never raised several of the disputes outlined in the motion filed by Mr. Cox. Specifically, the parties never discussed during its meeting of August 24, 2005, or follow up correspondence the alleged failure to provide the reports required by paragraph 21 of the Consent Decree, that the City engaged in discriminatory recruitment and hiring practices including the terms and conditions of employment of firefighters and police officer or the discriminatory conducted outlined in paragraph 7 of the motion filed by Mr. Cox. On these facts alone, the Motion filed by Mr. Cox should be dismissed outright.

The City offered to give Mr. Rose the background investigations of African-American candidates (Michael Newman and Domineek Bailey), but he refused to accept them. (See David Rose's Letter of September 1, 2005, marked as part of City Exhibit No. 1). The NAACP demonstrated bad faith in failing to accept the background investigations that the City was willing to provide to them. The City has nothing to hide as the NAACP alleges, but the City cannot make the NAACP accept the background investigations it is requesting. The City only asked that the background investigations that were provided to the NAACP not be

released to any third party, including the applicants themselves in order to protect the liberty and privacy interest of applicants. Mr. Rose could have reviewed the background information and determined whether the hiring practices of the City violated the provisions of the Consent Decree, but refused to do so. It is interesting to note that the City complied with the NAACP's request for the background investigation reports of Mr. Newman and Mr. Bailey as outlined in the letter of August 31, 2005, but yet the NAACP still filed its contempt action.

Mr. Rose's allegation that the "Disclosure of Information Agreement And Release of All Claims Involving the Disclosure of Information was contrary to the Consent Decree" (hereinafter "Agreement") and "likely to chill any private efforts to enforce the Decree" is without merit. First, the NAACP does not state how the Agreement violates the Consent Decree. The Agreement prevents an applicant regardless of race to agree not to sue the City for releasing information about the specific reasons why he or she was removed from an eligibility list. Nothing in the Agreement prevents any applicant regardless of race to assert any perceived interests under the Consent Decree or file an action under Title VII in federal court. Jenifer Johnson's Letter of August 31, 2005, refuted Mr. Rose's allegations as well and suggested he provide alternative language, but Mr. Rose never responded to this request. (See City Exhibit No. 1).

The City even pointed out to the NAACP its lack of good faith in dealing with the City in its letter of September 2, 2005. (See Frank

Martinez's letter to David Rose, marked as part of City Exhibit No. 1). The City once again agreed to release the background investigation of Mr. Newman and Mr. Bailey or in the alternative request a protective order from the Court which would outline the terms of disclosure, but the NAACP refused to take up the City on its offers by its silence in responding to this offer. The City cannot compel the NAACP to receive information it requested. Therefore, the motion filed by the NAACP should be dismissed for failing to comply with paragraph 24 of the Consent Decree because of its lack of good faith in resolving the dispute regarding the background investigation with the City. Instead the NAACP threatened the City on two separate occasions to go into federal court if the City did not capitulate to their demands. (See David Rose's Letter of August 31, 2005 and September 1, 2005, marked as City Exhibit No. 1). Such behavior is another example of the NAACP acting in bad faith when trying to resolve an allegation of non-compliance with the Consent Decree. It seems rather obvious that the NAACP was planning to seek the court's intervention regardless of what the City did to resolve the NAACP's perceived dispute.

### THE ALLEGATION THAT THE CITY HAS FAILED TO HIRE ONE AFRICAN AMERICAN FIREFIGHTER SINCE THE INCEPTION OF THE CONSENT DECREE IS UNTRUE.

The NAACP is wrong when it states that the City has yet to hire one African-American Firefighter. The City made offers and conditional offers to two African-American applicants and two white female

5

applicants during August 2005. Nearly 24 percent of those applicants being made offers to become firefighters in the 2005 class were either minority or female. Semaj Allen an African-American applicant requested a passover due to the illness of his mother and Angela Hamm, a white female, also requested a passover. Therefore, 13 percent of the hiring class for firefighters was either minority or female in 2005. Both Mr. Allen and Ms. Hamm will be the first two candidates offered firefighter positions in the next round of hiring which is set to take place in March 2006. (See Affidavit of Fire Chief Robert Bartnick, marked as City Exhibit No. 3). If they accept the positions in March 2006, the City of Springfield will be guaranteed another African-American and white female to its ranks of firefighters.

The NAACP is also wrong when it states that "several apparently well qualified and highly ranked applicants sought employment as a firefighter in 2003, and at least two more did so this year." The Court cannot hold the City in contempt of the Consent Decree for failing to hire "*apparently* well qualified and highly ranked applicants." (emphasis added). This assertion without documented evidence is not clear and convincing evidence that the Consent Decree has been violated.

**THE PLAINTIFFS LACK STANDING TO INTERVENE ON BEHALF OF MICHAEL NEWMAN, DOMINEEK BAILEY, RICKEY DAVIS, RALPH HARRIS, RENATTA FRAZIER, CHRISTOPHER WALLACE, TWO AFRICAN-AMERICAN FIREFIGHTER APPLICANTS IN 2003 AND UNNAMED AFRICAN-AMERICAN OFFICERS**.

Michael Newman, Domineek Bailey, Rickey Davis, Ralph Harris, Renatta Frazier, Christopher Wallace, two African-American firefighter applicants in 2003 and unnamed African-American police officers are not parties to this cause of action nor have they intervened in this court action by asserting standing to protect any perceived interests under the Consent Decree. None of these individuals nor has the NAACP applied for leave to file a motion to intervene pursuant to Rule 71 alleging that they are members of the class intended to be protected by the decree, or that the decree favors or promotes their interests as members of a protected class. The Plaintiffs lack standing to assert the rights of these individuals unless these individuals request leave to intervene to protect any perceived interests. (See *Franz v. Village of Melrose Park*, 1992 U.S. Dist. LEXIS 12005, (N.D.Ill. 1992)(nonparties to the consent decree who sued the Village of Melrose Park lacked standing to sue to enforce the consent decree); *Moore v. Tangipahoa Parish School Board*, 625 F.2d 33, 34 (5th Cir. 1980) (Nonparty to a consent decree applied for leave to file a motion pursuant to Rule 71 to enforce a consent decree which was denied); *Williams v. City of New Orleans*, 1990 U.S. Dist. LEXIS 14707 (E.D. La. Oct. 30, 1990)(two police officers lacked standing to enforce a consent decree when they petitioned the court for leave to intervene); *City of West Chicago* v. Gorsuch, 1982 U.S.Dist. LEXIS 17808 (N.D.Ill. 1982) (nonparties to consent decree filed petition to intervene which was granted).

Rule 71 states "When an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if a party…"  Rule 71 does not state a third party (NAACP) can assert the rights of nonparties to the consent decree.  If the Court determines that the Plaintiffs have standing to assert the interests of Michael Newman, Domineek Bailey, Rickey Davis, Ralph Harris, Renatta Frazier, Christopher Wallace, two African-American Firefighter applicants in 2003 and unnamed African-American police officers then the City will supplement its response to the allegations made about these individuals.

Mr. Newman's attorney, Dan Fultz, has even stated that Mr. Newman does not believe that this was a racial issue in an interview with the State-Journal Register.  (See Exhibit No. 4).  Mr. Fulz continued by saying "Mr. Newman does not have any intention of using his race to become a Springfield firefighter.  He has every intention of using his qualifications to become a Springfield firefighter."  If Mr. Newman felt that the decision to deny him employment as a firefighter was based on his race he could have filed a Motion to Intervene in this court action or filed a charge of discrimination with the Illinois Department of Human Rights or the EEOC.

The City will note that the two African American applicants (Wilbur Day and Lakeshia Fox-Kimmons) in 2003, who filed for administrative review in the Circuit Court of Sangamon County never alleged that race

was a factor in their removal from the firefighter eligibility list. Nor did Mr. Rose raise a question about discriminatory hiring practices or a violation of the Consent Decree in April 2003, when he was provided with copies of the background investigations and psychological evaluations of Mr. Day and Ms. Fox-Kimmins. For Mr. Rose to do so now is disingenuous. Furthermore, Judge Patrick Kelley affirmed the decision to remove the 2003 African-American applicants from the Firefighter's Eligibility List. (See City Exhibit No. 5). Specifically, Judge Kelley found that the Springfield Civil Service Commission "had ample reason to remove each of these applicants from the Firefighter's Eligibility List due to unsatisfactory background investigations [and] in removing Plaintiffs due to the unsatisfactory psychological examination, the Commission was fulfilling its obligation under Rule 5.8A of the Rules of the Springfield Civil Service Commission" by following the recommendations of its expert. (See City Exhibit No. 5).

**THE CITY HAS MADE TREMENDOUS STRIDES IN HIRING AFRICAN-AMERICAN PATROL OFFICERS SINCE SEPTEMBER, 2001 TO THE PRESENT.**

Since September 2001, the City has hired nine African-American male patrol officers, one African-American female patrol officer, two Asian-American patrol officers, one Hispanic patrol officer, and ten white female patrol officers. (See City Exhibit No. 6). One African-American applicant, Jonathan Davis, was offered a position with the Springfield Police Department as a patrol officer but requested a passover in

December 2004 and a Hispanic male, Brian Wilson, also requested passover in August 2004 when he was offered a position with the Springfield Police Department as a patrol officer. (See City Exhibit No. 6). In the past two years, one African-American male was hired in 2005, three white females were hired in 2005, one Hispanic male was hired in 2004, one Asian male was hired in 2004, two African-American males were hired in 2004 and one African-American female was hired in 2004. Females made up 15 percent of the hiring class in 2005. Of the thirteen patrol officers hired in 2004, 38 percent were minorities.

      Tara Holder, the one African-American police officer who resigned recently, stated in her letter of resignation that her decision was "based on financial hardship and family issues [and] my reasons for leaving have been entirely financial hardship, personal and family issues." (See City Exhibit No. 7) She continued by stating that "[t]he Field Training Program has been an excellent learning environment…I have enjoyed working with my fellow officers and I will always consider them friends. The City has made this an opportune experience I will not forget. Thank you." Ms. Holder not only thanked the City for allowing her the opportunity to become a patrol officer, but found it to be an excellent learning environment and considered her fellow officers regardless of their race to be her friends. This letter establishes that the City of Springfield is providing a hostile-free working environment for its patrol officers regardless of race or gender.

## THE CITY HAS PROVIDED ALL THE REQUIRED REPORTS REQUIRED UNDER THE CONSENT DECREE.

The allegation that the City has failed to provide several reports required by paragraph 21 of the Consent Decree in a timely manner may be true in certain instances but nonetheless the City has provided these reports to the NAACP.  Plaintiffs state that "the City has violated paragraph 9 of the Consent Decree by engaging in employment practices which unlawfully discriminate against African-Americans for recruitment, hiring or other terms or conditions of employment of firefighters and police officers," but has provided the Court with any type of proof whatsoever that this has occurred.  (See paragraph 6 of Motion of Plaintiffs James E. Johnson and Tara Holder).  Self-serving assertions by Plaintiffs Johnson and Holder do not provide clear and convincing evidence of a violation of the Consent Decree.  In addition, Plaintiffs Johnson and Holder provided examples of alleged discriminatory conduct of individuals who have not intervened in this court action to assert these interests nor has the court made a determination that they have standing to assert a right to enforce the Consent Decree.  Plaintiff Johnson and Holder's assertion that the City recently hired eleven new white police officers omits the fact that two of those newly hired recruits were female and that the following class included an African-American.  The Consent Decree does not prevent the City from hiring whites if a hiring class does not include African-Americans.  It would appear that Plaintiff Johnsons and Holder are advocating racial quotas which are not

only unconstitutional but not required by the Consent Decree. The assertion that eleven African-American officers were eligible and qualified for hire assumes the City can pick and choose a person from the eligibility list based solely on their race is again unconstitutional and would open the City up for reverse discrimination lawsuits.

**THE CITY HAS TAKEN STEPS CONSISTENT WITH THE GOAL TO RECRUIT AND EMPLOY QUALIFIED AFRICAN-AMERICANS, OTHER MINORITIES AND FEMALE APPLICANTS IN INCREASED NUMBERS.**

The City has taken numerous steps to increase the number of minorities and females to both the Springfield Police Department and Fire Department. The Springfield Police Department has a full-time recruiter and the Springfield Fire Department has a recruitment team in place who has visited numerous colleges and universities, and attended minority events in the City of Springfield during the time the Consent Decree has been in effect. The City has also worked with the Springfield Housing Authority in recruiting minority youth and young women to its Junior Police Academy for the past two years. This is a recruitment tool that will hopefully lead young minority kids and young women to apply with the Springfield Police Department when they are older. The Police Department also has worked with the University of Illinois in the development of a law enforcement/corrections program for high school students in 2005.

The previous firefighter recruiter made contact with numerous black churches in Springfield area, but unfortunately only one black church allowed him to speak to their congregation.

The City through the Springfield Civil Service Commission passed banding for diversity purposes that became effective in selecting firefighters in July 2005. Banding allows individuals with statistically equivalent scores to be placed in bands and allows the Police or Fire Chief to rank-order individuals within the band using different criteria which takes into account not only race and gender, but prior work experience, ability to work with members of diverse backgrounds, previous public safety experience, military experience, departmental hiring needs and credit received for college level course work. This effectiveness of banding is shown in the 2005 hiring class for Firefighters. Banding allowed offers to be made to two African-American males and two white females and banding will ensure continued diversity in 2006 as well.

The City also introduced a Minority and Female Recruitment Committee made up of city personnel from the Police Department, Fire Department, Office Of Human Resources, and the Legal Department along with participation of a member of the NAACP and a member of the Race Relations Taskforce. The Committee has come up with numerous ideas including the ones discussed previously along with detailed visits to colleges and universities and participation at minority community

events, advertisement in minority publications, and work with the NAACP. (See the Recruitment Reports, marked as City Exhibit No. 8, regarding the City's extensive recruitment efforts).

Despite these efforts James E. Johnson, the representative of the NAACP on the Minority and Female Recruitment Committee, has failed to assist in these recruitment efforts. Specifically, Mr. Johnson visited a police recruitment class in June 2004 and told them he was not happy they were hired despite the fact that one minority was in the group, that the racial problems of the Springfield Police Department were known nationwide, that the recruits would be under a microscope and that it was his job to be a watchdog, and that he would never think of working for the Springfield Police Department because it was racially motivated. (See Exhibit No. 9). More recently, the NAACP through their representative James Johnson failed to assist in the recruitment efforts of the City. Specifically, Mr. Johnson was asked to contact other local branches of the NAACP around the state of Illinois in order to recruit potential candidates for the June 2005 police department entry examination but failed to do so, he asked to be included in recruitment trips but failed to contact Officer Barrington the Police Recruiter, and Mr. Johnson failed to work the City in developing a public service announcement to promote the June 2005 police entry examination. (See Affidavit of Joshua D. Carter, marked as City Exhibit No. 10). The Consent Decree requires the NAACP to assist and cooperate with the

City's recruitment efforts, but has at times hindered the progress of the City.

      WHEREFORE, Defendant prays that this Court dismiss the Motion to Enforce the Consent Decree and Application for An Order to Show Cause and Motion of Plaintiffs Johnson and Holder to Enforce the Consent Decree and for Rule to Show Cause and any other relief the Court deems just.

      Respectfully submitted,
CITY OF SPRINGFIELD, ILLINOIS,
Defendant,

By:   s/ Frank Martinez
Bar Number: 6225562
Assistant Corporation Counsel
Room 313, Municipal Center East
800 East Monroe Street
Springfield, Illinois 62701-1689
Telephone:  (217) 789-2393
Facsimile:  (217) 789-2397
Email: corporationcounsel@cwlp.com

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| THE SPRINGFIELD BRANCH, NATIONAL ) <br> ASSOCIATION FOR THE ADVANCEMENT ) <br> OF COLORED PEOPLE, et. al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vi. ) <br> ) <br> CITY OF SPRINGFIELD, ILLINOIS, et. al. ) <br> ) <br> Defendant, and ) <br> ) <br> POLICE BENEVOLENT AND PROTECTIVE ) <br> ASSOCIATION, UNIT NO. 5 and ) <br> INTERNATIONAL ASSOCIATION OF ) <br> FIREFIGHTERS, LOCAL 37, ) <br> ) <br> Third Party Defendants. ) | No. 00-3136 |

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 15, 2005, I electronically filed Defendant's Response to Motion to Compel Pursuant to FRCP 37 using the CM/ECF system, which will send notification of such filing to the following: David Rose, A. Courtney Cox, Ronald Stone and Donald Craven.

                                      **s/ Frank Martinez**
                                      Bar Number 6225562
                                      Attorney for Defendant
                                      City of Springfield
                                      Assistant Corporation Counsel
                                      Room 313 Municipal Center East
                                      800 East Monroe Street
                                      Springfield, Illinois 62701-1689
                                      Telephone:  (217) 789-2393
                                      Fax:        (217) 789-2397
                                      Email:      corporationcounsel@cwlp.com