IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

|  |  |
|---|---|
| THE SPRINGFIELD BRANCH, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al.<br><br>          Plaintiffs,<br>v.<br><br>THE CITY OF SPRINGFIELD, ILLINOIS et al.<br>          Defendants. | Civil Action No. 00-3136 |

REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE
THE CONSENT DECREE

The Defendant City has refused to make its reports of the background investigations of high ranking black applicants for firefighter positions available to plaintiffs without an agreement not to use it in judicial proceeding, although the Decree expressly requires that such records "shall be made available to plaintiffs..." without restrictions. Para. 20. Substantively, the City has violated the obligations imposed by the Consent Decree by hiring only 20 white firefighters until the date of the filing of this Motion. In addition, the City in 2005 reduced the percentage of black hires to about 7% (one out of 15) although it hired black police officers at an 18% rate under the Decree from 2001 through the end of 2004. Paras. 15; Deft. Ex. 6. Our Motion to Enforce seeks remedial relief for the City's violations of Paras. 15 and 20 of the Decree.

The Response of the City seeks to avoid the issues raised by this motion, and provides no evidence to justify the refusal of the City to comply with the Decree. This Court should order the City's prompt disclosure under Para. 20 of the documents sought by plaintiffs, and should set a date for an evidentiary hearing to resolve the disputed factual issues under Para. 15.

The purpose and goal of the Decree is to increase firefighters and police officers " in numbers reflecting their availability in the Springfield labor market" and to "ensure that qualified African Americans... are not disadvantaged in the recruitment, selection and hiring of firefighters and police officers." Para. 4  Yet the City failed to hire any black firefighters until September 12, 2005 and it has hired only one September 12th.  The City sharply reduced in 2005 the recruitment and hiring of black police officers, it recently discharged police officer Wallace and its practices have resulted in the recent resignation of police officer Holder, and the retirement of Sgt. Harris.  The City's practices caused a decrease in black representation in the police force.

1. Defendant City argues that "Plaintiffs Lack Standing" to enforce the rights of African Americans, and that plaintiffs don't have authority to seek and obtain relief on behalf of black applicants and employees. Response at 6-9.  Yet in paragraph 5, the Defendant City and the Plaintiffs agreed that "The NAACP has traditionally asserted the rights of its members and associated persons in the courts..."  and that this "Court shall retain jurisdiction ...to hear and resolve any motions to enforce or modify the Decree." Para. 5 and para. 25. Plaintiffs, like the Defendant City, have the right to file motions under the Decree. In making the contrary argument, Defendant City avoids any mention of the enforcement provisions of the Decree.

"...voluntary compliance [is] the preferred means of achieving the objectives of Title VII" and a consent decree is both a court order and a contract between the parties and the "voluntary nature of a consent decree is its most fundamental characteristic." <u>Firefighters Local 93 v. City of Cleveland,</u> 478 U. S. 501, 515, 521-522.  In arguing that plaintiffs cannot enforce the Decree, the City is violating both its agreement and a lawful Order of this Court.  The City's citation to district court decisions denying a non-party the right to enforce a consent decree is

irrelevant to this case, because the Plaintiffs initiated this suit and are parties and have the right to enforce it by filing a motion to enforce. Para. 25.

One of the advantages of a consent decree which is "'designed to be carried out over a period of years ...'" is that it will be "subject to the continuing oversight and interpretation by the court...A court that maintains continuing jurisdiction over a consent decree will have a more flexible repertoire of enforcement measures.'" Firefighters Local 93 v. City of Cleveland, supra, 478 U. S. at 523-524, and fn. 13. In this case we seek the kinds of remedies expressly authorized by Title VII, namely make whole relief designed, insofar as possible, to restore the victims of discriminatory conduct to the position they would have been in if they had been treated lawfully, including further injunctive relief, including back pay, seniority attorneys' fees and expenses. See, Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975).

In this case the Consent Decree provides expressly for motions by a party to enforce or modify the Decree, after efforts of the parties to reach agreement have proved unsuccessful. Para. 24 and Para 25. This Court should enter an Order confirming the right of plaintiffs to file this Motion to Enforce the Decree, and granting relief on the disputed issues of law, and setting a hearing date for issues that may require further factual inquiry.[1]

2. The City has this year used its "Disclosure...Agreement and Release of All Claims"

---

[1] The City argues first for "clear and convincing evidence" to show that there has been or is a violation. Response, at 1-2. Yet the Plaintiffs' Motion to Enforce the Decree seeks only remedial relief, and not a citation for contempt of Court. Motion to Enforce, at 5, last paragraph. Motions by a party to enforce the Consent Decree are authorized by the Consent Decree. Paragraph 25. In light of the fact that applicant Newman had retained Attorney Noll for his claims under state law, we have attached the Declaration of Newman, dated Sept. 28, 2005, submitted herewith, showing the facts and his desire to have his rights under the Decree enforced in this case.

3

form to preclude applicants Newman and Bailey (at least) from reading and using the report of its investigation about their backgrounds; and the City has stated that it would make the background reports available to plaintiffs only if they agree not to share the reports or information to the "applicants themselves" Letter of Aug. 31, 2005 by the City to the undersigned. Deft. Ex.6 Accord: Response at 3-4 .

Only each applicant knows whether any facts set forth in the background report are correct and complete, or inaccurate or misleading. Functionally therefore, such a "Disclosure...Agreement and Release of All Claims" form Release once executed by the applicant, would, if found enforceable, bar the applicant from filing of a new suit or enforcement of the Consent Decree, and would in any event impede the enforcement of the applicant's rights under Title VII. Sec. 703(a)(1) and (2), 42 U. S.C. 2000e-(5)(a)(1) and (2), Connecticut v.Teal, 357 U.S. 440, 445-446 (1982).

Applicants Newman and Bailey have not authorized the City to "protect" their "liberty and privacy interests." Compare Response at 4. And any privacy concerns they or the City may have about those reports can be protected by a Court Order limiting public disclosure of documents containing privacy concerns, as is common practice in federal courts and elsewhere. No such concerns are raised in disclosing the information to the individual applicant whose privacy is at issue.

The Defendant City harmed Applicants Newman and Bailey by labeling them "disqualified" and removing them from the eligibility lists. Yet Defendant City sought to make its reports of background investigations about those applicants available to plaintiffs only on terms that would bar the plaintiffs from discussing them with the applicants. The City has failed

to offer any evidence showing a good reason for this refusal to disclose, much less any business necessity, for that removal. Such a refusal is a violation of Sec. 20 of the Decree.

A reasonable finder of fact may infer that the City's refusal to disclose the documents to plaintiffs and the Court suggests that the reports do not contain any job related reason for the denial of employment to two of the highest ranked black applicants for firefighter positions.

The Defendant City has also failed to offer evidence as to how many white applicants, if any, were removed from the list for background reasons and how many, if any, white applicants were disqualified because of the same kind of information which the City found to be unfavorable to Newman and Bailey.

The City seeks to prevent this Court, the plaintiffs and the applicants themselves from learning what facts are asserted in the City's report of the information it obtained in its reports of the backgrounds of Applicants Newman and Bailey. The City apparently, but not explicitly, assumes that it has the right to condition an applicant's right to see and present information about assertions in those reports. The City cannot defend its conduct without producing evidence.

Accordingly, we believe that this Court should rule that the disqualifications of Newman and Bailey have not been shown to be "job related" or "required by business necessity" and that at least on a prima facie basis, the City's removal of them from consideration for employment is incompatible with the Consent Decree. Para. 15. In addition, this Court's Order should enjoin further use of the "Disclosure ...and Release of All Claims Form" because it is incompatible with the purposes and terms of the Consent Decree. [2]

---

[2] While the last words of the first sentence of para. 3 a "stemming from the City's release of information to the applicant" could be read alone as using the document in Court, the second sentence of that clause says that if any court rules [that the release and waiver is invalid]....the

3. The Defendant City's Response to the plaintiffs' allegation that the City hired only twenty white firefighters from September 1, 2001 through June 30, 2005 is that it made offers, to two black applicants in August, 2005, and that one of the applicants requested a "pass over" Response at 5-6  That contention concedes that the City's twenty (20) hires for the position of firefighter for the three years and almost 11 months of the Decree were all white, and that at most one of the 15 firefighters hired on September 12, 2005, was black. Response at 5-6; Defendant's. Ex. 6 at 5-6 confirms the accuracy of plaintiffs allegation.

The Defendant City has offered no argument and no evidence of any good reason to justify the fact that it did not hire any black applicants for firefighter from Sept. 1, 2001 until after the filing of Plaintiffs' motion on Sept. 1, 2005.  And on this record the fact is that Defendant City hired only one (1) black out of a total of 35 firefighters hired to date, or about 3%.

The absence of a job related reason is notable in light of the fact that the City hired from its list of police officer eligibles nine (9) qualified black applicants out of the fifty (50) police officer hires from September 1, 2001 through December 31, 2004. See, Deft. Ex. 6 at 1-3. Yet the qualifications for police officer and firefighter positions are similar and both departments tend to hire applicants with the same characteristics.

---

applicant agrees to waive any monetary damages...."  The only stated exception in the release is that "...nothing in this subsection shall affect the applicant's ability to seek administrative review of the Civil Service Commission's decision and such right is specifically preserved." The Form's statement of one exception suggests  what the plain language states, namely that the "Agreement" is designed to prevent applicants from learning the facts upon which the CSC's "disqualification"was based and using it to support a claim under Federal law, including Title VIII of the CRA of 1964, as amended, and that it is intended to preclude applicants from exercising their rights under the Act.

5. The City argues, without reference to the parties, history of conduct since the inception of this case, that plaintiffs failed to confer in good faith before filing this motion. Response at 2-3.

The Consent Decree in this case was signed and filed on Sept. 5, 2001. Docket Entries 85, 87 and 77. The plaintiffs have at all times since the suit was filed in 2001 been represented by the same attorney. A difference between the parties that arose in 2001 or early 2002 was resolved on February 18, 2003 by the filing of a Supplement to the Consent Decree signed by all of the parties. Docket Entry 2003. Plaintiffs sought to resolve their differences with Defendant City at that time by negotiations and agreement under para. 24 and 25 of the Decree, and the parties did so.

In August 2004 and in February 2005, Springfield did not timely file the Reports due under para. 21 of the Consent Decree. On April 1, 2005, Plaintiffs, by their attorney, wrote a letter to the Corporation Counsel about "Consent Decree...Apparent Non-Compliance." In that letter, plaintiffs stated:

> "We write pursuant to paragraph 24 of the Decree, in an effort to resolve issues without the need for further adversarial proceedings...We have not received the City's semi-annual reports" that were due in August, 2004 and February, 2005 ...........
> Other problems may be even more significant.."

That letter then detailed apparently discriminatory actions by the City against four black police officers in the City's Police Department, Officers Wallace and Harris, and Lt. Davis and Dep. Chief Williams. That letter asked the Corporation Counsel for an early response, "including what action the City plans to take to rectify the problems addressed.." Letter of April 1, 2005.

Although Corporation Counsel advised plaintiffs by telephone in mid-April that she was

working on a response, no response to the letter was received during the month of April. On May 6, 2005, plaintiffs wrote again on the same subject, stating "I have not received a response from you or anyone else from Springfield to my letter " and stated that if the City did not respond promptly, "we will have to assume that the allegations are correct and that Springfield does not intend to correct" them. The City took no remedial action concerning the apparently discriminatory conduct alleged in the letters from plaintiffs and no action at all other than to produce the two late reports months, apparently in early June, 2005.

Plaintiffs had good cause and ample opportunity to file a motion to enforce the Decree in April and May, 2005, but declined to do so. After receipt of the two reports by the City, the plaintiffs, by letter of Aug. 10, 2005, requested a meeting with Corporation Counsel and other representatives, and the parties agreed upon Aug.24, 2005 as the date for the meeting. On that day, plaintiffs representatives, including the undersigned Attorney, met with the Corporation Counsel and other City officials.

On Aug. 24, 2005, the City furnished plaintiffs with a copy of the "Disclosure Agreement and Release of All Claims..." form which the City had adopted, and suggested that Michael Newman and Bailey execute them, so each of them could look at the City's report of its background investigation. The City has refused to modify that form as requested by plaintiffs so as to make it clear that the applicants themselves and their attorney could see and use them in this or other proceedings under Title VII.

The City refused to do so, and on Aug. 26, 2005, plaintiffs advised the City, that it disagreed with the City's position on this issue and asked the City to modify its form Release so as to make plain that it did not constitute a waiver of rights to enforce Title VII and this Decree.

On Aug. 31, 2005, plaintiffs wrote again on the same subject and stated

> My understanding from your failure to respond to my letter of Aug. 26 is that the City has declined to provide either the plaintiffs or their attorney, the undersigned, with a copy of each background report, even with an assurance that we will not make them public. We will ask the Court for a protective order if upon inspection it would appear that there is good cause for one. The City's apparent refusal to provide us with the background materials is in apparent violation of the Decree.

From April 1, 2005 through Aug. 31, 2005, plaintiffs attempted to resolve their disagreements with the City in good faith by the exchanges of letters and a face to face meeting. The available evidence shows that plaintiffs and the City were able to resolve their differences in the disagreement that ended on Feb. 18, 2003; but that parties were unable to agree this year, despite plaintiffs' several letters, telephone conversations and a meeting.

## CONCLUSION

For the reasons set forth above, and in the Motion to Enforce the Consent Decree, the Court should grant that Motion. This Court should enter an Order of the kind submitted herewith, and should declare that 1) that the Motion is properly brought under paras. 5, 24, and 25 of the Decree; and that 2) that the City's use of its "Disclosure ...and Release of All Claims" form is incompatible with the terms and purpose of the Consent Decree, should enjoin the City from use of that form, or other similar forms; and 3) the Court should set a date for an evidentiary hearing on any disputed issues of fact as to whether applicants Newman and Bailey or other black firefighter applicants were improperly found to be disqualified by the City from becoming firefighters, and what, if any relief should be granted them; and on the question of whether any black police officers or applicants for police officer were disqualified by the City or otherwise failed to be employed because of their race or because of use by the City of any selection

procedure which is not consistent with paragraph 15 of the Consent Decree; and 4) what additional or different recruiting techniques should be used by the City to attempt to achieve the goal of recruiting and hiring qualified African American police officers and firefighters in numbers reflecting their availability among the qualified candidates in the Springfield labor market as set forth in para. 4 of the Decree.

.

                Respectfully submitted,


                /s/ David L. Rose_____
                David L. Rose
                1320 19th St., N. W., Suite 601
                Washington, DC 20036
                Attorney for the Plaintiffs

Oct. 3, 2005