E-FILED
Tuesday, 04 October, 2005 01:35:11 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| THE SPRINGFIELD BRANCH, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al, <br><br> Plaintiffs, <br> v. <br><br> CITY OF SPRINGFIELD, ILLINOIS, et al <br><br> Defendant, and <br><br> POLICE BENEVOLENT AND PROTECTIVE ASSOCIATION, UNIT NO. 5 and INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 37, <br><br> Third-Party Defendants. | CASE NO. 00-3136 |

### MOTION OF PLAINTIFFS JAMES E. JOHNSON AND TARA HOLDER FOR LEAVE TO FILE A REPLY TO THE RESPONSE OF DEFENDANT CITY TO PLAINTIFF'S MOTION TO ENFORCE THE CONSENT DECREE

Now come Plaintiffs, James E. Johnson and Tara Holder (formerly known as Tara Borders), by their attorneys, Hart & Hart, and for their Motion to Enforce Consent Decree and for Rule to Show Cause, state:

The City has filed a Response to the Motion filed by Plaintiffs to Enforce the Consent Decree which requires a reply by Plaintiffs Johnson and Holder in order for the Court to be more fully advised in this matter.

WHEREFORE, Plaintiffs, James E. Johnson and Tara Holder, respectfully request leave to file the attached Reply to the Defendant City's Response to Plaintiff's Motion to Enforce the Consent Decree and such other and further relief as the Court deems appropriate.

1

                     HART & HART
                     Attorneys for Plaintiffs
                     Johnson and Holder

                     BY:  s/A. COURTNEY COX

A. COURTNEY COX
Illinois Bar #06182590
HART & HART
Attorneys at Law
P. O. Box 937
Benton, IL 62812-0937
Telephone: 618-435-2962
Telefax: 618-435-2962
Email: courtc@harthart.com

## PROOF OF SERVICE

The undersigned hereby certifies that copy of the foregoing will be sent to the following attorneys through the ECF System on October 4, 2005.

                     Jenifer Johnson
                     Corporation Counsel
                     City of Springfield
                     Room 100, Municipal Center West
                     300 South Seventh Street
                     Springfield, Illinois 62701-1680

                     Donald M. Craven
                     Attorney for IAF Local #37
                     1005 North 7th Street
                     Springfield, IL 62702

                     Ronald J. Stone
                     Attorney for PB&PA Unit #5
                     725 South 4th St.
                     Springfield, IL 62703

                     David L. Rose
                     Rose & Rose
                     1320 19th Street, N.W., Suite 601
                     Washington, D.C.  20036

                               S/A. COURTNEY COX

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| THE SPRINGFIELD BRANCH, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al, | ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) CASE NO. 00-3136 |
| CITY OF SPRINGFIELD, ILLINOIS, et al | ) ) |
| Defendant, and | ) ) |
| POLICE BENEVOLENT AND PROTECTIVE ASSOCIATION, UNIT NO. 5 and INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 37, | ) ) ) ) ) |
| Third-Party Defendants. | ) |

**REPLY MEMORANDUM OF PLAINTIFFS JOHNSON AND HOLDER**

The City asserts in its Response to the Motion filed by Plaintiffs to Enforce the Consent Decree that Courtney Cox, present attorney for Plaintiffs Johnson and Holder, failed to confer with the City prior to filing the Motion to Enforce Consent Decree on behalf of Plaintiffs Johnson and Holder. The City also asserts that Attorney David Rose "failed to confer with the City in good faith in order to resolve the alleged violations of the Consent Decree". This assertion is not correct. The obligation of Plaintiffs to confer with the City prior to bringing this action has been met.

Attorney Rose has advised the Court [Doc.100] that he sent at least five letters to the City and met with their attorneys and other personnel in Springfield

on August 24, 2005 about this matter. He did so on behalf of all of the Plaintiffs, including Plaintiffs Johnson and Holder. The City failed to respond to Attorney Rose's letter regarding non-compliance with the Consent Decree for well over a month, and then responded only after Attorney Rose sent a second letter to the City asking for a response to his first letter. Finally, Attorney Rose traveled from Washington, D.C. to Springfield and met personally with the City about these matters but was unable to achieve any resolution of the matter.

There are three main issues raised by Attorney Rose's communications with City and by these present motions. These issues all involve the City's failure to comply with the Consent Decree.

1. **Failure to file reports in a timely manner as required by paragraph 21 of the Consent Decree**

On page 11 of its Response, the City attempts to brush away its failure to comply with the reporting requirements of the Consent Decree by stating "The allegation that the City has failed to provide several reports required by paragraph 21 of the Consent Decree in a timely manner may be true in certain instances but nonetheless the City has provided these reports to the NAACP".

Corporation Counsel Jenifer Johnson admitted in her letter to Attorney Rose dated May 12, 2005 [responding to Rose's letter of April 1, 2005] that the City had failed to file the three reports [2 which were due in 2004 and 1 which was due in February 2005]. Johnson claimed that these failures to abide by the Court's Decree were an "oversight".

4

The testimony of former Chief of Staff, Letitita Dewith-Anderson, indicates if this failure was an "oversight", it is an "oversight" born of the City's failure to take the Decree seriously. Dewith-Anderson, as Chief of Staff to Mayor Davlin, reminded Mayor Davlin and Corporation Counsel in 2003 of the need to comply with the Consent Decree. Dewith-Anderson testified in a recent deposition as follows:

```
I had, as I said, done a summary of the consent decree outlining the
consent decree and had a conversation with the mayor and said he needed
to familiarize himself with this and that our corporation counsel,
Jenifer Johnson, needs to make sure she looked at this, because I did
not think that we were doing everything we were supposed to do.  We
were not adhering to the consent decree.

Q.  In other words, out of compliance?

A.  Yes.

Q.  And in what way?

A.  Reports, from my understanding, were not being made.  At first I
was told they were, but then somewhere down the line that we were not -
- some reports that were not being made.  Then the recruiting.  There
were a lot of things in that consent decree that we were not in
compliance with.

Q.  How was this received when you brought it up?

A.  Well, we had a discussion, and the mayor was quite concerned.  He
said he hadn't had a chance to look at it.  He would look at it.  I
believe he and Jenifer actually did have a conversation which I was not
included in.  They brought in Frank Martinez, assistant corporation
counsel, to discuss this as well, because I think that was his area.

Q.  So to be clear, this is in 2003 that you're telling the mayor and
Martinez and Jenifer Johnson and so on that you need to know what's in
the consent decree and we need to comply with it including filing
reports in a timely manner?

A.  That is correct.

Q.  The reason I'm asking you that, let me show you this letter, G24,
and really there's just one part I'll direct your attention to,
paragraph number one, and ask you to read that.  I see here that
according to Jenifer -- this is written by Jenifer Johnson, by the way.
It says, "You're correct that the 2004 report -- that would have been
two reports -- "and the February 2005 report were not provided.  So we
see there are at least three reports after you advised them that they
needed to comply that they did not file, but the thing I wanted to ask
```

```
you about is the next part of this.  The next sentence says, "The City
regrets this oversight." Now, in view of the fact you had written
memos, had discussions, pointed this out, stressed the seriousness
of following the Court's decree, do you believe that the failure to
file those reports was an oversight?

A.  Let me say this.  In all fairness to Jenifer and to the mayor,
their characteristics are such that they are -- I'm trying to think of
a nice word.  I believe they're not -- they did not take this
as seriously as they should or else they thought they knew more than
what was actually there and that -- I don't know.  I believe it could
have been an oversight.

Q.  I guess the reason I'm bringing it up is what I'm seeing based on
what you're telling me here about you bringing concerns that are not
addressed, people basically not listening to you, we're seeing here
now it's an oversight -- that this administration just didn't take the
racial issues, including the police department, seriously.

A.  I would say that is correct.
```

The City's now appears to claim that its failure to file the required reports for over a year and half, after being reminded that they had to do so, should be forgiven because they finally filed the reports all at one time, and then only after the Plaintiffs complained. This attitude toward its obligations under the Consent Decree is consistent with Dewith-Anderson's testimony that this administration does not take racial issues, including the police department, seriously.

2. **Failure to hire black firefighters and police officers in adequate numbers as required by paragraphs 10 and 11 of the Consent Decree**

The number of African-American police officers is now less than it was at the time the Consent Decree was entered in 2001. This is due, in part, to the City's failure to implement and maintain an effective recruitment program and to take appropriate action to discipline employees who are responsible for racially discriminatory practices. Likewise, the City has failed to significantly increase the number of African-American firefighters.

6

Mayor Timothy Davlin has admitted that the City has failed in its efforts to recruit minorities. Dewith-Anderson, in her recent deposition, explained the reason for this failure as follows:

```
Q.  During the time you were there, were the efforts of the recruitment
committee successful?

A.  No.

Q.  Do you feel like the administration really took that seriously?

A.  No, because the meetings that we had in my office, we actually met
with Superintendent Diane Rutledge to try to create some type of
program and we gave that to the mayor, and nothing happened with that.
The recruiters -- nothing ever happened, so it indicated to me that it
wasn't taken seriously.
```

Dewith-Anderson further explained that the failure to successfully recruit minorities is due in part to the failure of the City to adequately fund the recruitment program.

```
Q.  Was one of the problems you wanted to address minority recruitment
into the police and fire department?

A.  Yes.

Q.  Did you come up with some sort of package that would address that?

A.  I put together -- and this is when I was executive assistant, so I
didn't have much say in telling people what to do other than
coordinating things.  I put together a minority recruitment with our
with our legal staff, Frank Martinez -- I think that's his last
Last name -- Sandy Robinson, and we talked together with Mark Dymant
and some community former fire department and we also met with Don
Kliment, the police chief, and we would try to come up with recruiting
efforts.  At the time, I looked at the budgets, because I thought first
looking at the consent decree for the NAACP case that we needed to make
sure there was a line item in the budget of the fire department and
police department so we could show we were recruiting.  At the time,
the police department did have a recruiting line; the department did
not.  The recruiter was Mark Dymant who said to me, "Letitia, I can't
get anyplace because we don't have the money."

Q.  This is for the fire department?

A.  For the fire department.  So when I talked to the police and to the
fire chief, I had said, "The fire department has to have a line item."
I talked to the mayor at the time and said, "There's a consentdecree
that says we have to recruit, and when you're sending the police
department two whites to recruit African-Americans or any other Latino,
```

```
any other minority group, we're not going to get a good response,and if
the line item is so small that they can't go further out or can't bring
other people in to do the recruiting for us, it's a moot point."  So at
the time,the mayor did agree that at least the fire department needed
to have a line item for recruiting and we made sure we put that in the
budget.

Q.  But they didn't increase the amount?

A.  No.

Q.  Which is what --

A.  The police department did not increase, as I suggested, and the
fire department did increase, because it went from zero to something.
```

Thus, while the City agreed in 2001 to increase numbers of minorities in the police department and to implement and maintain a recruitment program aimed at increasing these numbers, the City has failed to do so, again because it has failed to take the Decree seriously. They attempt to blame the NAACP and Plaintiff Johnson for this failure, but the obligation to implement and maintain the recruitment program and to increase the numbers of minorities is the responsibility of the City, both by agreement and by Decree of this Court. Attempting to shift the blame for this failure to others is further indication that the City does not take its responsibilities under the Decree seriously.

3. **Continued employment practices which unlawfully discriminate against African-Americans in recruitment, hiring and other terms and conditions of employment in violation of paragraph 9 of the Consent Decree**

The City asserts that the Plaintiffs in this case lack standing to intervene on behalf of others who are not parties to this case. This argument lacks merit. The Consent Decree provides, in paragraph 9, that the City "shall not engage in any employment practice which unlawfully discriminates against African-Americans, other minorities, or women for recruitment, hiring or other terms or

8

conditions of employment of firefighters and police officers". This provision brings all African-American police officers and firefighters, and applicants for those positions, under the umbrella of protection created by the Consent Decree. It is a violation of the Consent Decree to discriminate against African-American police officers, firefighters, and applicants even if they are not formally parties to this action. They are members of the class of people who are protected by the Consent Decree.

The City asserts that Plaintiffs lack standing to assert the rights of persons who are members of this class unless those persons request leave to intervene. Such a requirement would render paragraph 9 of the Consent Decree meaningless and ineffective. The issue here is whether the City violated the terms of the Consent Decree by discriminating against African-American police officers, firefighters and applicants. There is ample evidence that many such violations have occurred since the Consent Decree was entered. Such people do not have to be parties to this action in order for the Court to find that the City has violated the decree.

WHEREFORE, Plaintiffs, James E. Johnson and Tara Holder, respectfully request the following relief:

A. That the Court conduct a hearing regarding the issue of whether the City is in compliance with the terms of the Consent Decree;

B. That the City be required and compelled by the Court to comply with the terms of the Consent Decree;

C. That the Court enter an Order requiring the City to show cause why it should not be held in contempt or otherwise sanctioned for failing to comply with the terms of the Consent Decree;

D. That the Consent Decree be extended beyond the ten (10) year period established by paragraph 23 of the Consent Decree;

E. That the Court award Plaintiffs Johnson and Holder attorney fees and costs incurred in connection herewith;

F. For such other and further relief as the Court deems just and appropriate.

>    HART & HART
>    Attorneys for Plaintiffs
>    Johnson and Holder
>
>    BY:  s/A. COURTNEY COX

A. COURTNEY COX
Illinois Bar #06182590
HART & HART
Attorneys at Law
P. O. Box 937
Benton, IL 62812-0937
Telephone: 618-435-2962
Telefax: 618-435-2962
Email: courtc@harthart.com

**PROOF OF SERVICE**

The undersigned hereby certifies that copy of the foregoing will be sent to the following attorneys through the ECF System on October 4, 2005.

Jenifer Johnson
Corporation Counsel
City of Springfield
Room 100, Municipal Center West
300 South Seventh Street
Springfield, Illinois 62701-1680

Donald M. Craven
Attorney for IAF Local #37
1005 North 7th Street
Springfield, IL 62702

Ronald J. Stone
Attorney for PB&PA Unit #5
725 South 4th St.
Springfield, IL 62703

David L. Rose
Rose & Rose
1320 19th Street, N.W., Suite 601
Washington, D.C. 20036

S/A. COURTNEY COX