E-FILED
Monday, 17 October, 2005 04:20:13 PM
Clerk, U.S. District Court, ILCD

# ROSE & ROSE

*A Professional Corporation*
*1320 19th Street, N.W.*
*Suite 601*
*Washington, D.C. 20036*
*Telephone: (202) 331-8555*
*Fax: (202) 331-0996*

*David L. Rose*
*daver@roselawyers.com*
*(202) 331-8555*

*Joshua N. Rose*
*josh@roselawyers.com*
*(202) 331-8556*

*David M. Wachtel*
*davew@roselawyers.com*
*(202) 331-8557*

*Terri N. Marcus*
*tmarcus@roselawyers.com*
*(202) 331-0363*

April 1, 2005

<u>By Fax and First Class Mail</u>
Ms. Jenifer Johnson, Corporation Counsel
City of Springfield
800 E. Monroe, Room 313
Springfield, IL 62701

Re:    Consent Decree in Springfield Branch, NAACP, et al. v. City of Springfield,
Case No. 00-3136, U.S. District Court, Central District of Illinois; Newly
Apparent Non-Compliance with Decree Entered September 5, 2001

Dear Ms. Johnson:

This letter is written to secure the City of Springfield's compliance with the Consent Decree the Springfield Branch NAACP entered into with the City in September 5, 2001. We write pursuant to paragraph 24 of the Decree, in an effort to resolve issues without the need for further adversarial proceedings.

We have not received the City's semi-annual employee reports for February and August of 2003, the same for the year 2004 and the February report for 2005, yet each of those reports was required by paragraph 21 of the Decree. We are not sure whether we received the two reports that were due in 2002.

Other problems may be even more significant. Police Officer Christopher Wallace, newly hired black officer, who was still in training, was summarily terminated without informing Dep. Chief Robert Williams, although Dep. Chief Williams was in charge of training. Our information is that Chief Williams was told that Officer Wallace's progress in training was good.

Other conduct of the police department is also relevant here. When Officer Ralph Harris, a black employee, took the examination for Sergeant and placed third on the list of eligibles, the City did not extend the length of time for that list as we believe was possible. The City thus appears to have denied Officer Harris a promotion he would have received had the language and purpose of the Decree been followed.

RECEIVED

**EXHIBIT**
**#3**

APR 0 4 2005

CORPORATION
COUNSEL

Other African-American officers also appear to have had their rights violated since the Decree went into effect, too. Lt. Rickey Davis was followed by an internal affairs detail, without apparent cause. Lt. Davis was also excluded from important meetings of the chain of command, while no white lieutenants were excluded. Chief Kliment also did not authorize Lt. Davis and Sergeant Ralph Harris, also African-American, to attend a convention of police officers for the last 2 years, although white officers are allowed to attend such conventions on department time and pay. Lt. Davis was additionally harassed by Chief Kliment by transferring Det. Cookson from his command without Lt. Davis's knowledge.

A couple of other incidents bear mention here. Although a recruitment committee was formed by the Springfield force in June 2003, the Black Guardians were not included in recruiting until April 2004. We also note the notorious Renatta Frazier incident also involved the police department. Finally, Sgt. Harris was not granted the Crimestopper position even though he appears to have been more qualified than the other candidates.

The conduct recited above indicates that the City has not only failed to meet the goals set forth in paragraph 4 of the Decree, but also appears to have engaged in employment practices that violate the Decree. For example, it appears to have violated paragraph 9, which prohibits discrimination against African-American officers in the terms and conditions of their employment. Any violations of the Decree should of course be remedied. If the City can offer practical, specific solutions to these problems under the terms of paragraphs 24 and 25 of the Decree, there will be no need for us to seek court intervention.

Please let me have your early response to this letter, including what action the City plans to take to rectify the problems addressed here. Thank you for your cooperation.

Sincerely,

David L. Rose
Attorney for the Plaintiffs, Springfield Branch, NAACP and NAACP

cc:     Kenneth Page, President, Springfield Br.
        Archie Lawrence, Legal Redress Chairman, Springfield Br.

# ROSE & ROSE

*A Professional Corporation*
*1320 19th Street, N.W.*
*Suite 601*
*Washington, D.C. 20036*
*Telephone: (202) 331-8555*
*Fax: (202) 331-0996*

*David L. Rose*
*daver@roselawyers.com*
*(202) 331-8555*

*Joshua N. Rose*
*josh@roselawyers.com*
*(202) 331-8556*

*David M. Wachtel*
*davew@roselawyers.com*
*(202) 331-8557*

*Terri N. Marcus*
*tmarcus@roselawyers.com*
*(202) 331-0363*

May 6, 2005

By Fax and First Class Mail
Ms. Jenifer Johnson, Corporation Counsel
City of Springfield
800 E. Monroe, Room 313
Springfield, IL 62701

Re:     Consent Decree in Springfield Branch, NAACP, et al. v. City of Springfield,
        Case No. 00-3136, U.S. District Court, Central District of Illinois; Newly
        Apparent Non-Compliance with Decree Entered September 5, 2001

Dear Ms. Johnson:

We wrote you five (5) weeks ago in a letter dated April 1, 2005 noting Springfield's failure to comply with the reporting provision of the Consent Decree in this case and the apparent failure of Springfield's Police Department to comply with the Decree with respect to several black officers. When I spoke with you on the telephone in mid-April you indicated that you were working on a response to my letter.

I have not received a response to from you or anyone else from Springfield to my letter sent more than a month ago.

If we do not hear back from you shortly about this, we will have to assume that the allegations contained in that letter are correct and that Springfield does not intend to correct what has gone on.

If you wish to proceed by some sort of agreement, I need a written response from the City indicating what corrective action has been or will be taken.

Thank you for your prompt attention to this matter.

Sincerely,

David L. Rose
Attorney for the NAACP

cc:    Dennis Hayes, Esq.



**COPY**

<u>Assistant Corporation Counsel</u>
Tracy A. Johansson
James A. Lang
Frank E. Martinez
Joshua D. Carter
Angela Fyans
Megan E. Morgan
Jason Anselment

**OFFICE OF CORPORATION COUNSEL**
**CITY OF SPRINGFIELD, ILLINOIS**

**JENIFER L. JOHNSON**
**Corporation Counsel**

Rm. 313 Municipal Center East
800 East Monroe Street
Springfield, IL 62701-1689
Phone: (217) 789-2393
Fax:     (217) 789-2397

May 6, 2005


David Rose
Rose & Rose
1320 19th Street N.W., Suite 601
Washington D.C.  20036

Dear Mr. Rose:

I received your fax dated today following up with your earlier correspondence. Please be assured that we take the concerns raised in your letter very seriously, but are working diligently to compile information demonstrating that the allegations are unfounded.  Because your letter was so broad in scope and covered many different areas of concern, it has taken considerable time to draft a comprehensive response.  I anticipate that our response will be completed within the next week.


Sincerely,

Jenifer L. Johnson
Corporation Counsel



Assistant Corporation Counsel
  Tracy A. Johansson
  James A. Lang
  Frank E. Martinez
  Joshua D. Carter
  Angela Fyans
  Megan E. Morgan
  Jason Anselment

**OFFICE OF CORPORATION COUNSEL**
**CITY OF SPRINGFIELD, ILLINOIS**

**JENIFER L. JOHNSON**
**Corporation Counsel**

Rm. 313 Municipal Center Eas
800 East Monroe Stree
Springfield, IL 62701-168S
Phone: (217) 789-239:
Fax:     (217) 789-2397

May 12, 2005


David Rose
Rose & Rose
1320 19th Street N.W., Suite 601
Washington D.C.  20036

Dear Mr. Rose:

I received your correspondence dated April 1, 2005, concerning the Consent Decree between the NAACP's Springfield Branch and the City of Springfield. Your letter makes numerous summary allegations.  I am confident that when you review the facts surrounding each item of which you make mention, you will find the City is indeed abiding by the terms of the Consent Decree.  I will address each allegation in turn.

1.  Reporting Requirements

First, I note that you were provided with the semi-annual reports for February and August of 2003.  If you are unable to locate those documents, I have copies of what was previously provided and would be happy to forward you an additional copy if necessary.  You are correct that the 2004 reports and February 2005 report were not provided.  The City regrets this oversight, and the relevant materials are attached hereto.

2.  Christopher Wallace

In order to address the issue of Christopher Wallace's termination from the Springfield Police Department, a short overview of his history with the Department is necessary.  Mr. Wallace was hired by the Springfield Police Department on December 9, 2002.  All new recruits without prior law enforcement experience must successfully complete certain requirements that include graduation from the police academy and the Department's field training

Page 2

program. Mr. Wallace was sent to the Illinois State Police Academy in January of 2003. Following the completion of this program, Mr. Wallace failed the required Law Enforcement Certification Test. The Department then provided him with additional training at our own Academy and through the Police Training Institute in Champaign, Illinois. He also attended training at the Sangamon County Sheriff's Office. Despite these efforts, Wallace again failed the State Certification Test. At that point, the Department arranged for Mr. Wallace to attend the ongoing Academy at the Police Training Institute. After an additional two months of training at PTI, Wallace passed the Certification Test on the third attempt. He then entered the Springfield Police Department's Field Training Program, more than seven months after his initial hire date.

The Department's Field Training Program is intended to last fifteen weeks. Mr. Wallace was extended during this training six different times for a total of twelve weeks due to various deficiencies. Contrary to your assertion that Mr. Wallace was "summarily terminated," Mr. Wallace was in fact given every opportunity to succeed by the Department. He was sent to an additional academy for training and was extended in field training an unprecedented six times. At every turn, all of his supervisors commented that he was a very likeable person and a hard worker, just not one cut out to be a police officer. Although Wallace was ill suited for police work, the City was so impressed with his character that he was later hired to work for City Water, Light and Power, and by all accounts, is very successful in his new position.

In summary, Wallace was given a longer period of time to complete the requirements to become a police officer than any other person in the documented history of the police department and was then hired by the City in another capacity when he was ultimately unable to complete the requirements to become a police officer. These facts demonstrate that Wallace was anything but "summarily terminated" and his reasons for leaving the department were anything but race related.

Your letter alleges that Deputy Chief Williams was not informed of the termination although he was in charge of training. However, under the Springfield Police Department Probationary Officer Manual, the Field Training and Evaluation Process falls in the chain of command of the Deputy Chief of Operations, not that of the Deputy Chief of Professional Standards. Thus, Deputy Chief Williams was not in the chain of command of the officers in the field training program. Discussions regarding Wallace's unsuccessful field training were properly run through the Deputy Chief of Operations. I have attached a copy of these guidelines for your review.

Page 3

### 3. Ralph Harris

Officer Ralph Harris finished 17th on the list for promotion to sergeant created in 2001. In October 2003, Officer Harris was third on the sergeant promotional list when the list expired. In December 2003, the expired list was revived by the Springfield Civil Service Commission and extended one year retroactive to October 3, 2003. Therefore, Harris remained third on the list. In August 2004, when promotions from the sergeants' list appeared imminent, a group of officers sued the Springfield Civil Service Commission requesting an injunction and alleging that it was improper to extend the list that had expired in October 2003. The City defended the lawsuit and argued that the extension of the list was permissible at an expense of over $9,000 to the City. The City prevailed in the lawsuit and Harris was promoted to sergeant on October 1, 2004. Therefore, the allegations in your letter that Harris was denied a promotion are simply untrue.

### 4. Rickey Davis

In 2002, Lt. Rickey Davis was the subject of an internal affairs investigation relating to allegations that he was regularly missing from his third watch shift for hours at a time. In response to these allegations, the department investigated Lt. Davis just as it would any officer who was alleged to be shirking his or her job-related responsibilities.

As far as the allegations that he was excluded from important meetings, it is impossible for the City to respond to such a vague assertion without information regarding the dates of such meetings.

### 5. Convention

Lt. Davis and Sgt. Harris have made requests that the Department pay for their travel and attendance at a national convention for African-American law enforcement officers. Both were told they were welcome to attend at their own expense, but that the Department would not pay for the trips. Due to current budgetary issues, travel expenditures in the Department have been severely limited.

### 6. Dane Cookson

As to your assertion that Lt. Davis was somehow "harassed" by the transfer of Det. Cookson, this is simply a baffling statement. Det. Cookson was temporarily transferred from the Criminal Investigations Division to the

Page 4

Professional Standards Division to assist in conducting background
investigations of applicants for the police force, an area in which he had
previous experience. Det. Cookson was then transferred back to Investigations
once the backgrounds were completed. Detectives are routinely transferred to
assist in background investigations and, to my knowledge, no other supervisor
has ever felt harassed by such routine re-assignment of personnel.
Furthermore, the Chief of Police is not required to ask the permission of a
subordinate officer before assigning personnel to an area where they are
needed.

    Lt. Davis has never brought these allegations to the City's attention. If you
have any specific allegations of harassment, please provide them to me for
appropriate follow up.

    7. Recruitment committee

    A minority recruitment committee was indeed formed internally by the City
in 2003. The original participants of this committee were representatives from
affected departments including the Police and Fire Departments, Human
Resources, Community Relations, the Mayor's Office and the Legal
Department. The makeup of the committee was at the management level, and
also included persons whose direct job responsibilities were related to
recruiting. After initial meetings, the members of the committee believed that
they would benefit from input by additional people including representatives
from the NAACP, the Race Relations Task Force and the Black Guardians.
Although numerous oral invitations for the Black Guardians to send a
representative to the committee were extended beginning in January 2004, no
response was received until April 2004. In fact, the Black Guardians failed to
respond to the invitations extended by the Chief of Police until the media in
Springfield reported such failure. Representatives from the Black Guardians
began attending meetings of the committee in May 2004, but have declined to
actively assist with recruiting.

    8. Renatta Frazier

    I note that your letter does not cite any specific concern relating to Renatta
Frazier. However, the Renatta Frazier matter has been thoroughly addressed,
and her lawsuit against the City of Springfield was settled in 2004.

Page 5

9. Crimestoppers

Ralph Harris was one of four applicants for the Crimestoppers position. During the competitive application process he did very well, ultimately finishing second. The interview panel consisted of five individuals and was led by Deputy Chief Robert Williams (an African-American). There can be no serious argument that anything but the merits of the candidates determined the selection of the current Crimestoppers coordinator. I have attached Deputy Chief Williams' recommendation for your review.

I trust that these explanations will demonstrate that the City has lived up to its obligations as set forth in the Consent Decree. Please contact me if you have any questions.

Sincerely,

Jenifer L. Johnson
Corporation Counsel


Enclosures

# ORGANIZATION AND MISSION OF BOARDS

**Step Review Board**
**Composition**

The first, second, and third boards are chaired by the Field Training Coordinator and are composed of:

1. The Field Training Officer
2. The Field Training Sergeant
3. The next assigned Field Training Officer

The fourth board will be chaired by the **Deputy Chief** of Operations and is composed of:

1. The Field Training Officer
2. The Field Training Sergeant
3. The next assigned Field Training Sergeant
4. The Field Training Coordinator

Mission of Boards

First, second, third, and fourth boards will review and discuss reports and evaluations pertaining to the Probationary Officer. The board may call upon any Department member who may have information that would be helpful.

Each of these boards will determine one of the following:

1. If the Probationary Officer is ready to move to the next Step;
2. If the Probationary Officer needs an extension of training; or
3. If the Probationary Officer is progressing satisfactorily for retention

The Probationary Officer will be advised of the board's recommendation immediately after its meeting. The findings of the board are to be documented on the Step Review Report.

## PROCEDURE FOR RECOMMENDING TERMINATION OF EMPLOYMENT

If, during the Field Training and Evaluation Process, it is concluded that a Probationary Officer should be recommended for termination, the Field Training Coordinator shall be notified immediately. The Field Training Coordinator will gather all documentation relative to the eventual decision. The Field Training Coordinator will prepare a report summarizing the Probationary Officer's performance, remedial training given and/or offered, and the Probationary Officer's response, or lack of response, to this remedial training. The documentation shall reflect both the positive and negative aspects of the Probationary Officer's performance. This information shall be held in strict confidence.

Although the Field Training Officer is encouraged to keep the Probationary Officer appraised of his level of performance, it is not the Field Training Officer's responsibility to inform the Probationary Officer of an impending termination. The decision to recommend termination will be made only after all reports are reviewed by the Step Review Board chaired by the Deputy Chief of Operations. The Deputy Chief of Operations, or his designee, is responsible for notifying the Probationary Officer of the intention to recommend his/her termination from the Department.

When the Chief of Police concurs with the recommendation for termination, he/she will notify the Probationary Officer. Even though a Probationary Officer may elect to resign, rather than be terminated, all of the reports and evaluations shall be completed and maintained in his/her training file for future reference.



--------------SPRINGFIELD POLICE DEPARTMENT---------------
PROBATIONARY OFFICER MANUAL

SPRINGFIELD POLICE DEPARTMENT

Inter-Departmental Memorandum

TO:        Donald W. Kliment                                    _____ Division
           Chief of Police

                                                        Crime Prevention
FROM:      Robert L. Williams                           _____ Section
           Deputy Chief of Professional Standards

DATE:      May 18, 2004


SUBJECT:   Crimestopper Coordinator Position

Interviews for the "Crimestopper Coordinator Position" were conducted on May 17, 2004,  assessors
for the process were: Deputy Chief Robert L. Williams, Personnel Officer Cathy Murnaw and Sergea
Kevin Keen. Also present were Crimestopper Board Members, Cheryl Mc Gill and Desire Logsdon.
The PB & PA representative for this process was Officer Doug Sapetti. A minimum score of 70 out
100 was needed to be considered qualified for this position.


## Listed below are the results of the interviews.


**Officer Sarah L. Iaiennaro**          **89%**

**Officer Ralph Harris**                **84%**

**Officer Patrick Schweitzer**          **82%**

**Officer Terrance Davis**              **79%**


**I recommend that Officer Sarah Iaiennaro be selected to this position immediately,** since she
received the highest score. Also, I have maintained the complete file for this interview process, but if
you have any questions, please feel free to contact me at (217) 788-8380.