IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| THE SPRINGFIELD BRANCH, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al. | )<br>)<br>)<br>) |
| Plaintiffs, | ) Civil Action No.00-3136 |
| v. | ) |
| THE CITY OF SPRINGFIELD, ILLINOIS et al. | )<br>) |
| Defendants. | ) |

**PLAINTIFFS' STATEMENT OF FACTS
THEY BELIEVE TO BE UNDISPUTED**

1. At least since 2001, it has been the goal of the City to recruit and hire qualified black applicants to reflect its population which is about 15% black. Mayor Devlin has publically agreed with that goal and stated that he hoped the city would achieve it. Ex. 3 to Dep. of Anderson.

2. From September 1, 2001 through December 31, 2001, the Defendant City of Springfield hired sixteen police officers, of whom two, or 12.5% were African-American, or under the Decree " black."

3. In 2002, it hired 23 police officers, of whom four (4), or 17%, were black.

4. In 2003 and 2004, the Defendant City hired 15 police officers of whom 3, or 20%, were black. Deft. Ex. 6.

5. From January 1, 2005 through August 29, 2005, the Defendant City hired 20 police officer candidates, or whom only one (1), or 5%, is black. Deft. Ex. 6.

6. From September 1, 2005 to present, the Defendant City hired 54 police officers, of whom nine (9) are black, about 16.7%. Deft. Ex. 6.

7. In 2003, the Defendant City 20 firefighter candidates, all of whom are white and male. On September 12, 2005, the City hired sixteen 16 firefighter candidates, 15 of whom are white, and one is black, and one is female. Deft. Ex. 6. Of the 36 firefighters hired by the City since the Decree was adopted, only 1 is black, and only 1 is female.

8. In 2003, the City of Springfield disqualified several black and other candidates, for reasons related to background investigations, but not stated to the candidates.

9. The City failed to file the reports due under the Consent Decree on Feb. 1, 2004 and on August 1, 2005.

10. The City has failed to file the report due under the Consent Decree on Feb. 1, 2005.

11. Those three reports were not filed until after two letters from the attorney for the plaintiffs advising the City of that failure and possible consequences.

12. Michael Newman, a black man, passed the most recent written and physical examinations for firefighter, and was in the top band of firefighter candidates on the current list of eligibles. Mr. Newman was the highest ranking black candidate for firefighter. For reasons never stated to him or to his attorney or to plaintiffs, Mr. Newman was deemed to be disqualified by the Civil Service Commission of the City of Springfield, and his name was stricken from the list of eligible candidates. Mr. Newman would have been hired by the City of Springfield on or about Sept. 12, 2005, and would be employed as a firefighter of the Defendant City, but for, that disqualification. Declaration of Newman, filed in support of the September, 2005, motion to enforce.

13. Dominic Bailey, a black man, passed the written and physical examinations for firefighter, and was place in the next to top band of firefighter candidates by the Defendant City

of Springfield. For reasons never stated to him or to his attorney or to plaintiffs, the City's Civil Service Commission also deemed Mr. Bailey to be disqualified, and struck his name from the list of candidates eligible for employment by the City as firefighters.

14. The "Disclosure of Information Agreement and Release of All Claims Involving the Disclosure of Information" was used by the Defendant City of Springfield in 2005, and was tendered to applicants Newman and Bailey. They declined to sign it because that Form, if signed and deemed to be valid, would constitute a bar to the prosecution of any suit to enforce Title VII by the applicant who signed it, or would bar the applicant who signed it from receiving back pay and other make whole relief. Their belief that it so stated is reasonable.

15. On December 12, 2002, the City hired Christopher Wallace, a black man, as a police officer. Deft. Ex. 3. Deputy Police Chief Robert Williams, who is black, has been responsible for the Police Department for the training of new police officers. On or about Jan. 14, 2005, Deputy Chief Williams asked the training officer for Officer Wallace how Officer Wallace was doing, he was told that he was "doing fine." On Jan. 15, 2005, the Defendant City discharged Officer Wallace, without any reason stated to plaintiffs or the public.

16. Recently hired black police officers have had a disproportionately high number of problems with training officers than recently hired white officers.

17. At least two highly qualified black officers have resigned from the force in 2004 and 2005.

18. The Defendant City has not had an effective recruitment program for either police officers of firefighters in 2005. The City, through Mayor Devlin has so acknowledged.

                                           Respectfully submitted,

                                           /s/ David L. Rose
                                           David L Rose
                                           1320 19th Street, NW
                                           Suite 601
                                           Washington, DC 20036
                                           (202) 331-8555
                                           Attorney for the Plaintiffs.

December 5, 2005