E-FILED
Monday, 05 December, 2005  03:25:37 PM
Clerk, U.S. District Court, ILCD

**EXHIBIT 5**

```
1            IN THE UNITED STATES DISTRICT COURT

2           FOR THE CENTRAL DISTRICT OF ILLINOIS

3                   SPRINGFIELD DIVISION

4    RICKEY DAVIS, et al.,

5              Plaintiffs,

6         vs.                              No. 03-3007

7    JOHN W. HARRIS, et al.,

8              Defendants.

9

10

11           THE DEPOSITION of ROBERT WILLIAMS, taken

12   in the above-entitled case before Julie A. Brown, a

13   Certified Shorthand Reporter of Christian County,

14   acting within and for the County of Sangamon, State

15   of Illinois, at 1:05 o'clock P.M., on July 15,

16   2005, at 1005 North Seventh Street, Springfield,

17   Sangamon County, Illinois, pursuant to notice.

18

19

20

21

22
          Baldwin Reporting & Legal-Visual Services
23          Serving Illinois, Indiana & Missouri
       24hrs (217)788-2835    Fax (217)788-2838
24                 1-800-248-2835
```

1

```
 1    APPEARANCES:

 2          HART & HART
            BY:  A. Courtney Cox, Esq.
 3               602 W. Public Square
                 Benton, Illinois  62812
 4               On behalf of Plaintiffs.

 5          MR. FRANK MARTINEZ
                 Office of Corporation Counsel
 6               800 East Monroe
                 Springfield, Illinois  62701
 7               On behalf of Defendants.

 8    ALSO PRESENT:

 9               Mr. Rickey Davis
                 Mr. Donald Ewing
10               Ms. Lea Joy

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

```
 1   allegation was in custody and he wanted something
 2   in return, money in order to give you information.
 3        A    Uh-huh.
 4        Q    Did he want any, his charges to go away?
 5   Did he want leniency?
 6        A    I don't specifically remember any of
 7   that.  I do know he wanted some money and I made a
 8   decision that we weren't going to give him any
 9   money.
10        MR. MARTINEZ: I don't have anything further.
11        MR. COX: Let's go off the record.
12                  (Whereupon a short break was
13                  taken.)
14                  EXAMINATION
15                  BY MR. COX:
16        Q    Rob, does the department have a
17   recruitment committee?
18        A    At various times, yes.
19        Q    Does it currently have one?
20        A    Yes, it does, but it's in shambles at the
21   present time.
22        Q    It's in shambles?
23        A    Yeah.  Basically what we have is we have
24   a recruiting officer and what we do is we allow the
```

```
 1       A    Yes.
 2       Q    Do you believe that the other black
 3  officers it created as it did for you a hostile
 4  environment?
 5       MR. MARTINEZ: Objection.  Calls for
 6  speculation.
 7       THE DEPONENT: Yes.
 8       MR. COX:   Q   Do you think people ought to
 9  have to work in an environment like that?
10       A    No.
11       Q    Let's go ahead.  The next point is
12  failure to provide appropriate and
13  nondiscriminatory training for minority recruits
14  and you agree with that.  Right?
15       A    Yes.
16       Q    Then you go on to lift up the case of
17  Chris Wallace which you've talked about a little
18  bit but I want to explore it just a little bit
19  further a point that you make here.  It says not
20  only was recruit Wallace not provided adequate
21  training and mentoring by the department, which you
22  have discussed I think to some extent, but the
23  department purposely misled Deputy Chief Robert
24  Williams about the progress of recruit Williams.
```

```
 1   Do you see that?
 2        A    Yes.  It's recruit Wallace.
 3        Q    I mean recruit Wallace.  And so as I
 4   understand it the day before Wallace was discharged
 5   you checked with his field training officer on his
 6   progress and were assured he was doing fine.
 7        A    Uh-huh.  Yes.
 8        Q    Is that correct?
 9        A    Yes.
10        Q    Now, you were a superior officer to that
11   man, were you not?
12        A    Yes.
13        Q    And you, you had a right to know because
14   you were really over the training.
15        A    Yes.
16        Q    Did you feel that that was misleading to
17   you?
18        A    Extremely misleading.
19        Q    In other words, this man, do you think he
20   lied to you?
21        A    I'm not sure if he knew, but the
22   statement that he gave was definitely untrue.
23        Q    Okay.  In other words, he was supposed to
24   tell you that he was doing okay.
```

```
 1       A    Yeah, but that's definitely what he
 2   reported back to me.
 3       Q    And then the very next day in a meeting
 4   that you should have been invited to, Wallace was
 5   fired.
 6       A    Exactly.
 7       Q    And they didn't include you.
 8       A    No.
 9       Q    Because if they had included you, you
10   would have spoken out in favor of and in support of
11   Wallace.  Correct?
12            MR. MARTINEZ: Objection.  Calls for
13   speculation again.
14            THE DEPONENT: I definitely would have been in
15   support of retaining Chris Wallace in his capacity
16   as a probationary police officer.
17            MR. COX:   Q   And who made that decision to
18   terminate Wallace?
19       A    I was not in the room so I don't know.
20       Q    Do you think that's a decision that would
21   have been made without the blessing of Chief
22   Kliment?
23       A    No, I do not.
24       Q    Going on here, it says on page 3 failure
```

```
 1       A    Yes.
 2       Q    And that unless that environment is
 3   changed it could happen again?
 4       A    Yes.
 5       Q    You were asked if Chief Kliment had ever
 6   discriminated against you on the basis of your race
 7   and you said he had not.
 8       A    No.
 9       Q    But you've also indicated that you
10   believe that the discriminatory, that the actions
11   against Chris Wallace were racially
12   discriminatory.
13       A    Yes.
14       Q    And would it be fair to say that those
15   actions against Chris Wallace could not and would
16   not have been taken in the absence of approval by
17   the chief?
18       A    I believe so, but can I expand on that?
19       Q    Sure, you can.
20       A    Like I said from day one with the
21   Springfield Police Department, if I ever I felt
22   somebody had wronged me, didn't do me right, did
23   something that I thought was totally unacceptable,
24   I always came in to them man to man or man to
```