E-FILED
Monday, 05 December, 2005  03:37:50 PM
Clerk, U.S. District Court, ILCD

**EXHIBIT 8**

```
                                                              1

1              IN THE UNITED STATES FEDERAL DISTRICT COURT

2                  FOR THE CENTRAL DISTRICT OF ILLINOIS

3
      RICKEY B. DAVIS, et al.,        )
4                                     )
                   Plaintiffs,        )
5                                     )
                   vs.                ) No.  03-3007
6                                     )
      JOHN W. HARRIS, et al.,         )
7                                     )
                   Defendants.        )
8

9

10

11

12

13                    DEPOSITION OF FRANK McNEIL

14              TAKEN ON BEHALF OF THE PLAINTIFFS

15                     ON AUGUST 25, 2005

16

17

18

19

20

21

22

23

24   REPORTER:  LINDA HANAGAN, R.P.R., C.S.R. No. 084-002846
```

2

```
 1                INDEX OF EXAMINATION

 2                                              PAGE

 3
     Direct Examination
 4   By Mr. Cox                      . . . . . . .  5

 5   Cross Examination
     By Mr. Martinez                 . . . . . . . 70
 6
     Redirect Examination
 7   By Mr. Cox                      . . . . . . . 72

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

HANAGAN REPORTING SERVICE
Mt. Vernon, Illinois

3

```
 1              IN THE UNITED STATES FEDERAL DISTRICT COURT

 2                 FOR THE CENTRAL DISTRICT OF ILLINOIS

 3
     RICKEY B. DAVIS, et al.,      )
 4                                 )
                 Plaintiffs,       )
 5                                 )
                 vs.               )  No.  03-3007:04CV4116
 6                                 )
     JOHN W. HARRIS, et al.,       )
 7                                 )
                                   )
 8              Defendants.        )

 9

10              IT IS STIPULATED AND AGREED by and

11   between counsel for the Plaintiffs and counsel for the

12   Defendants that the deposition of FRANK McNEIL may be

13   taken pursuant to and in accordance with the provisions

14   of the Federal Rules of Civil Procedure; that the

15   deposition is being taken by and on behalf of the

16   plaintiffs on August 25, 2005 at the office of Donald

17   Craven, 1005 North Seventh Street, Springfield,,

18   Illinois, before LINDA R. HANAGAN, a Certified Shorthand

19   Reporter and Notary Public in and for the County of

20   Jefferson and State of Illinois; that issuance of

21   notice, or any defect therein, is waived and that this

22   deposition may be taken with the same force and effect

23   as if all statutory requirements had been fully complied

24   with.
```

```
 1                IT IS FURTHER STIPULATED AND AGREED that
 2      all objections to any or all parts of this deposition,
 3      other than to the form of the question, are hereby
 4      reserved and may be raised on the trial of this cause;
 5      that the signature of the deponent is not waived and
 6      that the transcript of this deposition may be used for
 7      any purpose concerning which the reporter could be
 8      called to testify at the time of trial.
 9
10                          APPEARANCES
11
12      For the Plaintiffs. . . . Mr. A. Courtney Cox
                                  Hart & Hart
13                                PO Box 937
                                  Benton, IL 62812
14
        For the Defendants. . . . Mr. Frank Martinez
15                                Asst. Corporation Counsel
                                  800 E. Monroe
16                                Room 313 Mun. Ctr East
                                  Springfield, IL 62701-1689
17

18
        ALSO PRESENT:             Mr. Rickey Davis
19                                Mr. Ralph Harris
                                  Ms. Lea Joy
20

21

22

23

24
```

                        HANAGAN REPORTING SERVICE
                           Mt. Vernon, Illinois

22

1   test -- and I'm saying we had some officers come on, I
2   think, in the last if not this band, the last one who
3   hit 70 percentile.  There were a couple officers in the
4   75, 76 percentile.  I'm saying the City can set a mark
5   of 80 saying if you make 80 or above, you should be in
6   the pool.  The mayor and the chief of police and civil
7   service should be able to select and that way we can
8   move much more quickly in getting a diverse department.
9   That's where I was with this whole process, so I never
10  -- I always felt that as long as you got yourself caught
11  up into the testing procedures and the process, it
12  wasn't the real crux of the issue, in my opinion.  What
13  was the problem?  The problem was rank order.  By the
14  time the test -- you got on the list and by the time
15  they finished hiring and the number of hires they would
16  have that the people on the low end of the 80 and 80s
17  were not going to be selected, and that has played out
18  to be pretty much true.
19          Q.  (MR. COX CONTINUING)  Well, to underscore
20  what you're saying, as I understand it recently, eleven
21  new recruits were hired, all white, although there were
22  eleven recruits that were on the list that were
23  qualified.
24          A.  Right.

29

1    words, there are three reports that as of May 12, 2005
2    had not yet been filed by the City.  Were you aware that
3    the City was that far out of compliance with the consent
4    decree?
5              MR. MARTINEZ:  Objection to relevance.
6              THE WITNESS:  No, sir.
7         Q.   (MR. COX CONTINUING)  Do you find that
8    troublesome?
9         A.   Yes.
10        Q.   Can you see that someone would look at that
11   and think that the City administration is not taking the
12   consent decree seriously?
13        A.   Well, my way of looking at it is they are
14   not complying with the consent decree, with the Order,
15   and we should comply with the Order.
16        Q.   But my question is -- I think that's -- I
17   agree with you.  I think it's pretty clear they're out
18   of compliance, but can you see that someone would take a
19   look at that failure to file three reports over a year
20   and a half period as ordered by the Court as not taking
21   the consent decree seriously?
22             MR. MARTINEZ:  Objection to relevance.
23             THE WITNESS:  I would probably look at it
24   and say it's not a priority.

36

1    impacted not only people who were to be hired but also
2    people who were currently in their positions with
3    respect to no discrimination.
4         A.   I'd say that's correct.
5         Q.   This was entered into in September -- early
6    September 2001.  The matters that arose with respect to
7    Renatta Frazier began in October of 2001, about a month
8    and a half, two months after this was entered into.  I'm
9    sure you're as aware or more aware than most people in
10   town what occurred in her case.  Would it be fair to say
11   that there was an element in what happened to Renatta
12   Frazier of race?
13        A.   I would say that's a fair assessment.
14        Q.   Would you agree with me that the way she was
15   treated by her superiors in her particular case was
16   discriminatory in a racial way?
17        A.   I would say it was discriminatory and
18   illegal.
19        Q.   Based on race?
20        A.   Right.
21        Q.   And so would it be fair to say then that
22   shortly after this consent decree was entered began an
23   unfolding of racial discrimination against an
24   African-American police officer, Renatta Frazier?

37

1        A.   I guess I don't -- I would say that I don't
2   know if it's an unfolding, but I would say that it
3   happened, so whether it unfolded --
4        Q.   I understand.  Would you agree with me that
5   what happened to her would be in violation of paragraph
6   nine of the consent decree which prohibits
7   discrimination against African-Americans and the terms
8   or conditions of their employment?
9             MR. MARTINEZ:  Objection.  Calls for
10  legal conclusion.  You can respond if you know.
11            THE WITNESS:  How should I say?  As a
12  result of the settlement, I guess that had some weight
13  to it, so I would say probably it's true.
14       Q.   (MR. COX CONTINUING) It goes on in paragraph
15  ten to say the City shall take such steps as are
16  consistent with its goal to recruit and employ qualified
17  African-Americans and so on.  Do you think that the City
18  has taken the steps that are necessary to achieve those
19  goals?
20            MR. MARTINEZ:  Objection to relevance.
21            THE WITNESS:  I would say the City has
22  not been bold enough and I feel more could have been
23  done.  One of the things I go back to is that my -- one
24  of the major issues is the rank order -- both police and

38

   1    fire ranking order from the highest score.  I think had
   2    the City been bold enough to take the step to say 80 or
   3    above should qualify, that we can choose people from
   4    that list, it doesn't matter as long as they pass the
   5    test, I think it would have gone a long way in resolving
   6    some of the recruitment issues within the police
   7    department and the fire department, because the pool of
   8    African-Americans would have been larger to choose from
   9    to get into the department.  As we talk about other
  10    discriminatory practices, you have to be there in order
  11    to understand what is going on and how it may impact
  12    you, so in that context, I think being -- taking a bold
  13    step to say we're going to move away from the practice
  14    of rank order and move to a different -- the City did
  15    move to banding which I think has to some degree some
  16    merit, but I think this moves the ball a little bit
  17    faster.
  18         Q.  In other words, looking at paragraph ten, as
  19    I read this, it looks like whatever is necessary to
  20    achieve that goal, whatever steps they have to take to
  21    achieve that goal, they need to take?
  22         A.  I would say that would be the way I would
  23    interpret that.
  24         Q.  And would it be fair to say that the fact

39

```
 1    they have not only not achieved that goal but it's even
 2    worse now in the police department than it was at that
 3    time would indicate that they have failed to take those
 4    steps that are needed?
 5            A.   I would say we need to take more steps.
 6            Q.   In other words, it hasn't worked?
 7            A.   It hasn't worked.
 8            Q.   If the proper steps or necessary steps were
 9    taken, it would have worked.  Would that be a fair
10    statement?
11                 MR. MARTINEZ:  What are the necessary
12    steps?  What do you mean by that?
13                 MR. COX:  I don't have to answer
14    questions.  You can make an objection.
15                 MR. MARTINEZ:  Clarify what you're
16    talking about.  How can he respond to something --
17                 MR. COX:  The witness didn't indicate he
18    couldn't answer the question, so if your objection is
19    you don't understand it --
20                 MR. MARTINEZ:  I'm just asking for
21    clarification what you mean by necessary steps if you
22    want the witness to answer the question.
23                 MR. COX:  Frank, whether you understand
24    the question or not is really not the issue.  Whether
```

74

1    be moved out.

2         Q.  And wouldn't it be a fair statement, would

3    you agree with me, that if allowed to take its natural

4    course in the way things are in the department that we

5    would -- that is without some intervention by lawsuits

6    or litigation or other means intervening in that

7    process, intervening in that environment that you're not

8    going to see increased numbers, you're not going to see

9    the promotions you need.  You're not going to see the

10   black presence in the police department.  Would you

11   agree with that?

12         MR. MARTINEZ:  Objection.  Calls for

13   speculation.

14         THE WITNESS:  Based on the historical

15   what I have seen in my past 15, 18 years, I would say

16   that's probably a correct statement.

17         MR. COX:  Thank you, sir.  That's all I

18   have.  Signature?

19         MR. MARTINEZ:  We'll reserve.

20

21

22

23

24