IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| THE SPRINGFIELD BRANCH, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF SPRINGFIELD, ILLINOIS, et. al. <br><br> Defendant, and <br><br> POLICE BENEVOLENT AND PROTECTIVE ASSOCIATION, UNIT NO. 5 and INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 37, <br><br> Third Party Defendants. | No. 00-3136 |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' AMENDED MOTION TO ENFORCE CONSENT DECREE AND RESPONSE TO AMENDED MOTION OF PLAINTIFFS JAMES E. JOHNSON AND TARA HOLDER TO ENFORCE CONSENT DECREE AND FOR RULE TO SHOW CAUSE**

**NOW COMES** Defendant, by and through its attorneys, Jenifer L. Johnson, Corporation Counsel, and Frank Martinez, Assistant Corporation Counsel, and submits its response to the Amended Motion to Enforce Consent Decree and Amended Motion of Plaintiffs Johnson and Holder to Enforce Consent Decree and for Rule to Show Cause and states as follows:

### STANDARD OF REVIEW

To prevail on a motion for civil contempt, "a party must prove by 'clear and convincing evidence' that the opposing party violated a court order." *Goluba v. School Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir.

1995)(quoting *Stotler and Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir.

1989)); *United States v. McDahl*, 257 F.3d. 694, 699 (7th Cir. 2001).  To

hold a party in contempt, the district court "must be able to point to a

decree from the court which 'set(s) forth in specific detail an unequivocal

command' which the party in contempt violated."  *Ferrell v. Pierce*, 785

F.2d 1372, 1378 (7th Cir. 1986) (quoting *H.K. Porter Co. v. National*

*Friction Prods.*, 568 F.2d 24, 27 (7th Cir. 1977)); see also *Stotler and Co. v.*

*Able*, 870 F.2d 1158, 1163 (7th Cir. 1989)(a party can only be held in

contempt for behavior clearly prohibited by the court order within its four

corners).

## RESPONSE TO STATEMENT OF FACTS

1.    The Defendant denies the allegations in paragraph 1.  The City has

       agreed to recruit and hire qualified African-Americans, other

       minorities and women to reflect their availability in the labor

       market as required by paragraphs 10 and 11 of the Consent

       Decree.  To do so otherwise would violate the terms of the consent

       decree.

2.    The Defendant admits the allegation set forth in paragraph 2-5.

       The Defendant notes that 21.7 percent of the officers hired in 2002

       were minorities.  In 2003 and 2004, 40 percent of the officers that

       were hired in those two years were either minorities or women.

       (See City Exhibit No. 6).

3.    The Defendant denies the allegations in paragraph 6.  The City has hired 15 patrol officers since September 1, 2005, not 54 patrol officers as stated by the Plaintiffs of which three are African-American and three are white females.  Thus, 40 percent of the latest recruitment class is either African-American or women as the result of banding, a recruitment technique.  (See City Exhibit No. 6).

4.    The City admits the allegations set forth in paragraph 7.

5.    The City denies the allegations set forth in paragraph 8.  The City provided the reasons to the disqualified candidates by indicating they were removed from the eligibility list for having an unsatisfactory background investigation or psychological evaluation.  The two African-American candidates along with seven white male candidates were told specifically why they were removed from the eligibility list in the City's response entitled Defendant's Memorandum of Law in Opposition to Complaint in Administrative Review.  (See City Exhibit No. 9).

6.    The Defendant denies the allegations set forth in paragraphs 9-11.  The City did file said reports though untimely.  It was a mere oversight and not in response to the letter sent by Mr. Rose.

7.    The Defendant denies the allegations set forth in paragraph 12.  Michael Newman's attorney, Jon Gray Noll was allowed to review Newman's background investigation and legitimate non-

discriminatory reasons for his removal were discussed between Mr. Noll and the City officials. Mr. Noll indicated during the meeting that he would discuss the reasons with his client, Mr. Newman. In fact, Mr. Newman addresses these reasons in his affidavit to the Court.

8. The City denies the allegations set forth in paragraph 13. Mr. Bailey was told he was removed from the eligibility list because of the results of his background investigation were found to be unsatisfactory. The City tried to provide his background investigation to the NAACP, specifically Mr. Rose, but he refused to accept it. The City is not aware that Mr. Bailey is being represented by an attorney.

9. The City denies the allegations set forth in paragraph 14-18. The response to paragraph 14 and 15 are discussed in this response. The City is not aware of any recent disproportionately high number of problems experienced by African-American patrol officers in their training program when compared to white patrol officers. The Plaintiffs do not cite any examples, but the City would be happy to review any documentation that the Plaintiffs may have regarding this allegation and conduct an investigation, if appropriate, based on the circumstances of the allegations. Two qualified African-American patrol officer resigned in 2004 and 2005, but the Plaintiffs have not demonstrated that they were highly qualified for

the position.  The City has an effective recruitment plan for both patrol officers and firefighters otherwise the City would not have consistently hired African-Americans, other minorities and woman in greater numbers than their availability in the labor market as demonstrated above in Police Department and positive recruitment results are starting to be seen in the Fire Department with the introduction of banding.

**THE NAACP AND COX VIOLATED THE CONSENT DECREE BY NOT CONFERRING IN GOOD FAITH WITH THE CITY IN ORDER TO RESOLVE THE NAACP'S ALLEGED DISPUTE WITH THE CITY AND THE NAACP VIOLATED THE CONSENT DECREE BY REFUSING TO ACCEPT BACKGROUND INVESTIGATIONS IT REQUESTED IN ORDER TO RESOLVE A DISPUTE BETWEEN THE PARTIES WHICH COULD HAVE PREVENTED THIS COURT ACTION.**

The NAACP, through its attorney, David L. Rose, failed to confer with the City in good faith in order to resolve alleged violations of the Consent Decree.  Paragraph 24 of the Consent Decree requires "[i]n the event of a dispute over the interpretation of or compliance with the terms of this Decree, the parties shall exchange information and confer in good faith in an effort to resolve the dispute before initiating any adversarial proceeding before the Court."  Despite this requirement, the NAACP through its attorney failed to do so.  In addition, A. Courtney Cox entered his appearance in this case, but failed to adhere to this requirement by his failure to contact the City in order to resolve any of his alleged disputes.  In fact, Mr. Cox indicated in the amended motion he filed before this Court that he relied on his assumption that Mr. Rose

conferred in good faith with counsel for the City.  Mr. Cox was not

involved in any discussions held with Mr. Rose and counsel for the City

regarding the consent decree, nor did he even inform the City that he

was representing any of the former plaintiffs until he filed his appearance

in this case.  In fact, Mr. Rose never raised several of the disputes

outlined in the motion filed by Mr. Cox.  Specifically, the parties never

discussed during its meeting of August 24, 2005, or follow up

correspondence the alleged failure to provide the reports required by

paragraph 21 of the Consent Decree in a timely manner, that the City

engaged in discriminatory recruitment and hiring practices including the

terms and conditions of employment of firefighters and police officer or

the discriminatory conducted outlined in paragraph 7 of the amended

motion filed by Mr. Cox.  At no time during the City's discussion with Mr.

Rose did he indicate to the City that he was representing the claims of

Plaintiffs Johnson and Holder on behalf of Mr. Cox.  On these facts

alone, the Motion filed by Mr. Cox should be dismissed outright.

    The City offered to give Mr. Rose the background investigations of

African-American candidates (Michael Newman and Domineek Bailey),

but he refused to accept them. (See David Rose's Letter of September 1,

2005, marked as part of City Exhibit No. 1 contained in Defendant's

Original Response to Motion to Enforce Consent Decree, Court Document

No. 97).  The NAACP demonstrated bad faith in failing to accept the

background investigations that the City was willing to provide to them.

The City has nothing to hide as the NAACP alleges, but the City cannot make the NAACP accept the background investigations it is requesting. The City only asked that the background investigations that were provided to the NAACP not be released to any third party, including the applicants themselves, in order to protect the liberty and privacy interest of applicants and to ensure compliance with Springfield Civil Service Rule 4.12 ("Copies of a Personal History Questionnaire, background investigation or psychological screenings shall not be circulated to a candidate or employee nor will they be released unless required pursuant to court action").  Mr. Rose could have reviewed the background information, asked Mr. Newman and Mr. Bailey about information contained in the background investigation and determined whether the hiring practices of the City violated the provisions of the Consent Decree, but refused to do so.  In addition, the City allowed Mr. Newman's former attorney, Jon Gray Noll, the opportunity to review Mr. Newman's background investigation without his client being present and he did so. In fact, this led Mr. Noll to dismiss the state court action for administrative review regarding the Springfield Civil Service Commission's (hereinafter "Commission") decision because the City had provided legitimate non-discriminatory reasons for Mr. Newman's removal to Mr. Noll in the documents that were provided to him and the discussion that was held thereafter regarding Mr. Newman's removal. Had this not been the case, Mr. Noll would have continued Mr. Newman's

state court action and would have sought reversal of the Commission's decision. It is interesting to note that the City complied with the NAACP's request for the background investigation reports of Mr. Newman and Mr. Bailey as outlined in the letter of August 31, 2005, but yet the NAACP still filed its contempt action.

Mr. Rose's allegation that is was unlawful for the City to request that applicants execute a "Disclosure of Information Agreement and Release of All Claims Involving the Disclosure of Information" (hereinafter "Agreement") form before being told specifically why they were removed from the Eligibility List because it would prevent the applicant from enforcing their rights under Title VII of the Civil Rights Act of 1964, as amended, and the by the Illinois Freedom of Information Act, and their rights under the Consent Decree is without merit. First, the NAACP does not state how the Agreement itself would prevent an applicant from enforcing their rights under Title VII and under the Consent Decree. The City has not claimed that the Illinois Freedom of Information Act prevented the disclosure of information to any applicant. Furthermore, the Plaintiffs cite to an unpublished Appellate Court Order which cannot be used as persuasive authority in a court of law. Pursuant to Illinois Supreme Court Rule 23 (e):

> "An unpublished order of the court is not precedential and may not be cited by any party except to support contentions of double jeopardy, res judicata, collateral estoppel or law of the case. When cited for these purposes, a copy of the Order shall be furnished to all other counsel and the court."

Therefore, the Court should not rely on *Carson v. Davlin* nor permit the Plaintiffs to cite to the case as authority. In addition, the court should strike any reference to the *Carson* case in the Plaintiffs' brief and strike the court case entirely from the record.

The Agreement prevents an applicant regardless of race to agree not to sue the City for releasing information about the specific reasons why he or she was removed from an eligibility list. Nothing in the Agreement prevents any applicant regardless of race to assert any perceived interests under the Consent Decree or file an action under Title VII in federal court. Jenifer Johnson's Letter of August 31, 2005, refuted Mr. Rose's allegations as well and suggested he provide alternative language, but Mr. Rose never responded to this request. (See City Exhibit No. 1 contained in Defendant's Original Response to Motion to Enforce Consent Decree, Court Document No. 97).

The City even pointed out to the NAACP its lack of good faith in dealing with the City in its letter of September 2, 2005. (See Frank Martinez's letter to David Rose, marked as part of City Exhibit No. 1 contained in Defendant's Original Response to Motion to Enforce Consent Decree, Court Document No. 97). The City once again agreed to release the background investigation of Mr. Newman and Mr. Bailey or in the alternative request a protective order from the Court which would outline the terms of disclosure, but the NAACP refused to take up the City on its offers by its silence in responding to this offer. The City

cannot compel the NAACP to receive information it requested.  Therefore, the motion filed by the NAACP should be dismissed for failing to comply with paragraph 24 of the Consent Decree because of its lack of good faith in resolving the dispute regarding the background investigation with the City.  Instead, the NAACP threatened the City on two separate occasions to go into federal court if the City did not capitulate to its demands.  (See David Rose's Letter of August 31, 2005 and September 1, 2005, marked as City Exhibit No. 1 contained in Defendant's Original Response to Motion to Enforce Consent Decree, Court Document No. 97).  Such behavior is another example of the NAACP acting in bad faith when trying to resolve an allegation of non-compliance with the Consent Decree.  It seems rather obvious that the NAACP was planning to seek the court's intervention regardless of what the City did to resolve the NAACP's perceived dispute.

**THE PLAINTIFFS LACK STANDING TO INTERVENE ON BEHALF OF MICHAEL NEWMAN, DOMINEEK BAILEY, RICKEY DAVIS, RALPH HARRIS, RENATTA FRAZIER, CHRISTOPHER WALLACE, LEA JOY OR ANY OTHER AFRICAN AMERICAN APPLICANT AND FORMER PATROL OFFICERS**.

Michael Newman, Domineek Bailey, Rickey Davis, Ralph Harris, Renatta Frazier, Christopher Wallace, Lea Joy, any other African American applicants and former patrol officers are not parties to this cause of action nor have they intervened in this court action by asserting standing to protect any perceived interests under the Consent Decree. None of these individuals nor has the NAACP or any of the Plaintiffs

applied for leave to file a motion to intervene pursuant to Rule 71 alleging
that they are members of the class intended to be protected by the
decree, or that the decree favors or promotes their interests as members
of a protected class.  The Plaintiffs lack standing to assert the rights of
these individuals unless these individuals request leave to intervene to
protect any perceived interests.  See *Franz v. Village of Melrose Park*,
1992 U.S. Dist. LEXIS 12005 (N.D.Ill. 1992)(nonparties to the consent
decree who sued the Village of Melrose Park lacked standing to sue to
enforce the consent decree); *Moore v. Tangipahoa Parish School Board*,
625 F.2d 33, 34 (5th Cir. 1980) (Nonparty to a consent decree applied for
leave to file a motion pursuant to Rule 71 to enforce a consent decree
which was denied); *Williams v. City of New Orleans*, 1990 U.S. Dist.
LEXIS 14707 (E.D. La. Oct. 30, 1990)(two police officers lacked standing
to enforce a consent decree when they petitioned the court for leave to
intervene); *City of West Chicago v. Gorsuch*, 1982 U.S.Dist. LEXIS 17808
(N.D.Ill. 1982) (nonparties to consent decree filed petition to intervene
which was granted).

Rule 71 states "When an order is made in favor of a person who is
not a party to the action, that person may enforce obedience to the order
by the same process as if a party..."  Rule 71 does not state a third party
(NAACP or any of the Plaintiffs) can assert the rights of nonparties to the
consent decree.  The Plaintiffs read paragraph 9 too broadly when they
assert that it includes any African-American police officers, firefighters

and applicants even if they are not formal parties to this action. Such an interpretation would render Rule 71 meaningless and ineffective. The City is not indicating that such persons may not have a valid interest to intervene but, at minimum, intervention should be sought so a determination can be made by the Court on whether their interests are protected under the Consent Decree as a member of the protected class. Doing so without intervention would be in contravention of established case law requiring such action. In addition, Plaintiff Johnson and Holder do not cite any case law to support their assumption that any African American police officer, firefighters and applicants can join in this action without seeking intervention.

If the Court determines that the Plaintiffs have standing to assert the interests of Michael Newman, Domineek Bailey, Rickey Davis, Ralph Harris, Renatta Frazier, Christopher Wallace, Lea Joy, any other African American applicants and former patrol officers who are not parties to this cause of action then the City will supplement its response to the allegations made about these individuals.

Mr. Newman's attorney, Dan Fultz, has even stated that Mr. Newman does not believe that this was a racial issue in an interview with the State-Journal Register. (See Exhibit No. 4 contained in Defendant's Original Response to Motion to Enforce Consent Decree, Court Document No. 97). Mr. Fultz continued by saying "Mr. Newman does not have any intention of using his race to become a Springfield firefighter. He has

every intention of using his qualifications to become a Springfield firefighter." If Mr. Newman felt that the decision to deny him employment as a firefighter was based on his race he could have filed a Motion to Intervene in this court action or filed a charge of discrimination with the Illinois Department of Human Rights or the EEOC.

The City will note that the two African American applicants (Wilbur Day and Lakeshia Fox-Kimmons) in 2003, who filed for administrative review in the Circuit Court of Sangamon County never alleged that race was a factor in their removal from the firefighter eligibility list. Nor did Mr. Rose raise a question about discriminatory hiring practices or a violation of the Consent Decree in April 2003, when he was provided with copies of the background investigations and psychological evaluations of Mr. Day and Ms. Fox-Kimmins. For Mr. Rose to do so now is disingenuous. Furthermore, Judge Patrick Kelley affirmed the decision to remove the 2003 African-American applicants from the Firefighter's Eligibility List. (See City Exhibit No. 5 contained in Defendant's Original Response to Motion to Enforce Consent Decree, Court Document No. 97). Specifically, Judge Kelley found that the Springfield Civil Service Commission "had ample reason to remove each of these applicants from the Firefighter's Eligibility List due to unsatisfactory background investigations [and] in removing Plaintiffs due to the unsatisfactory psychological examination, the Commission was fulfilling its obligation under Rule 5.8A of the Rules of the Springfield Civil Service Commission"

by following the recommendations of its expert. (See City Exhibit No. 5 contained in Defendant's Original Response to Motion to Enforce Consent Decree, Court Document No. 97).

The City has not discriminated against police recruit Christopher Wallace and more importantly Mr. Wallace has never made said allegation to the Illinois Department of Human Rights, EEOC, or to the City while he was employed by the City nor has he filed any type of discrimination action against the City in state or federal court. It is significant to note that Mr. Wallace was hired after his discharge by the City and currently works for the City as a security officer. If it were the City's goal as the Plaintiffs insinuate to discriminate against Mr. Wallace based on his race while he was at the Springfield Police Department, it certainly would not have offered him another position within the City that better fits his talents. The City would be willing in provide the entire documentation as it relates to Mr. Wallace, in-camera, in order to protect the liberty and privacy interests of Mr. Wallace and would encourage the Court to request said information in order to determine for itself that the Plaintiffs' allegation is baseless and without any merit. In fact, the Plaintiffs failed to provide any factual basis to make such an allegation, making it nearly impossible for the City to respond to pre-determined legal conclusions.

The Plaintiffs Johnson and Holder allege that the Deputy Chief of Professional Standards, Robert Williams, was not invited to a meeting in

14

which Mr. Wallace's performance was discussed.  Under the Springfield

Police Probationary Officer Manual, the Field Training and Evaluation

Process falls in the chain of command of the Deputy Chief of Operations,

not the Deputy Chief of Professional Standards.  Thus, Deputy Chief

Williams was not in the chain of command of the officers in the field

training program.  Discussions regarding Mr. Wallace's unsuccessful

field training were properly run through the Deputy Chief of Operations.

(See City Exhibit No. 1).  The City has an excessive amount of

documentation to show that Mr. Wallace was not "doing fine."

**THE CITY HAS TAKEN STEPS CONSISTENT WITH THE GOAL TO RECRUIT AND EMPLOY QUALIFIED AFRICAN-AMERICANS, OTHER MINORITIES AND FEMALE APPLICANTS IN INCREASED NUMBERS.**

The City has taken numerous steps to increase the number of

minorities and females to both the Springfield Police Department and

Fire Department.  The Springfield Police Department has a full-time

recruiter and the Springfield Fire Department has a recruitment team in

place that has visited numerous colleges and universities and attended

minority events in the City of Springfield during the time the Consent

Decree has been in effect.  The City has also worked with the Springfield

Housing Authority in recruiting minority youth and young women to its

Junior Police Academy for the past two years.  This is a recruitment tool

that will hopefully lead young minority kids and young women to apply

with the Springfield Police Department when they are older.  The Police

Department also has worked with the University of Illinois in the

development of a law enforcement/corrections program for high school students in 2005.

The previous firefighter recruiter made contact with numerous black churches in Springfield area, but unfortunately only one black church allowed him to speak to their congregation. Deputy Chief Michael Geiger also received the same response when he tried contacting Black churches for their assistance with recruitment efforts.

The City through the Springfield Civil Service Commission passed banding for diversity purposes that became effective in selecting firefighters in July 2005 and patrol officers in August 2005. Banding allows individuals with statistically equivalent scores to be placed in bands and allows the Police or Fire Chief to rank-order individuals within the band using different criteria which takes into account not only race and gender, but prior work experience, ability to work with members of diverse backgrounds, previous public safety experience, military experience, departmental hiring needs and credit received for college level course work. This effectiveness of banding is shown in the 2005 hiring class for Patrol Officers and Firefighters. Banding allowed offers to be made to two African-American males and two white females in the Fire Department along with four white females and three African American being employed with the Police Department in 2005, and banding will ensure continued diversity in 2006 as well.

16

The City also introduced a Minority and Female Recruitment Committee made up of city personnel from the Police Department, Fire Department, Office Of Human Resources, and the Legal Department along with participation of a member of the NAACP and a member of the Race Relations Taskforce.  The Committee has come up with numerous ideas including the ones discussed previously along with detailed visits to colleges and universities and participation at minority community events, advertisement in minority publications, and work with the NAACP.  (See the Recruitment Reports, marked as City Exhibit No. 8, regarding the City's extensive recruitment efforts contained in Defendant's Original Response to Motion to Enforce Consent Decree, Court Document No. 97).   For Plaintiffs Johnson and Holder to argue that the City has not taken its recruitment efforts seriously is without merit and against the manifest weight of evidence that has been produced for the Court's review.

Despite these efforts James E. Johnson, the representative of the NAACP on the Minority and Female Recruitment Committee, has failed to assist in these recruitment efforts.  Specifically, Mr. Johnson visited a police recruitment class in June 2004 and told them he was not happy they were hired despite the fact that one minority was in the group, that the racial problems of the Springfield Police Department were known nationwide, that the recruits would be under a microscope and that it was his job to be a watchdog, and that he would never think of working

for the Springfield Police Department because it was racially motivated. (See Exhibit No. 9 contained in Defendant's Original Response to Motion to Enforce Consent Decree, Court Document No. 97). More recently, the NAACP through their representative James Johnson failed to assist in the recruitment efforts of the City. Specifically, Mr. Johnson was asked to contact other local branches of the NAACP around the State of Illinois in order to recruit potential candidates for the June 2005 police department entry examination but failed to do so, he asked to be included in recruitment trips but failed to contact Officer Barrington the Police Recruiter, and Mr. Johnson failed to work the City in developing a public service announcement to promote the June 2005 police entry examination. (See Affidavit of Joshua D. Carter, marked as City Exhibit No. 10 contained in Defendant's Original Response to Motion to Enforce Consent Decree, Court Document No. 97). The Consent Decree requires the NAACP to assist and cooperate with the City's recruitment efforts, but has at times hindered the progress of the City. If anything, Plaintiff Johnson as the NAACP's representative has not taken recruitment efforts seriously, which is clearly a violation of the consent decree by the NAACP since he acts as their agent/representative to the Minority and Female Recruitment Committee.

The Minority and Female Recruitment Report dated January 1, 2005, to June 30, 2005, indicated "[w]hile the City hoped that bringing the Black Guardians to the table would be a major step in helping our

recruiting effort, their designated representatives [Ralph Harris and
Rickey Davis] have proven themselves unwilling to actively assist the City
in recruiting minority candidates.  One of these representatives [Ralph
Harris] has not attended four of the past five meetings.  The other
individual [Rickey Davis] has repeatedly expressed his unwillingness to
actively assist the City in recruiting.  Therefore, those individuals will no
longer be invited to take part in the recruitment committee's efforts."
(See City Exhibit No. 8 contained in Defendant's Original Response to
Motion to Enforce Consent Decree, Court Document No. 97 and City
Exhibit No. 2 attached to this filing).  In addition, the June 30, 2004,
Recruitment Committee minutes support the fact that Rickey Davis and
Ralph Harris on behalf of the Black Guardians refused to help the City
recruit minorities.

Specifically, the minutes indicate "[t]he Black Guardians refused to
assist with recruitment unless the City was willing to indicate that they
were going to hire a specific number of African-Americans.  Frank
Martinez told Rickey Davis and Ralph Harris that this would be
interpreted as a hiring quota and quotas were illegal.  Without this
commitment the Black Guardians were not willing to assist in the
recruitment efforts because they felt their credibility would be hurt in the
black community if they could not tell the black community that the City
was going to hire a specific number of African-Americans.  Mr. Martinez
once again told Mr. Davis and Mr. Harris that the City could not commit

to hiring quotas for African-Americans because this type of action was not permissible under the law." (See City Exhibit No. 8 contained in Defendant's Original Response to Motion to Enforce Consent Decree, Court Document No. 97). For Mr. Cox to state that "[t]he City has failed to properly utilize minorities" is simply untrue. (See Pg. 7, Memorandum of Plaintiffs Johnson and Holder in Support of Amended Motion of Plaintiffs James E. Johnson and Tara Holder). The opposite is true. The City tried to work with representatives of the Black Guardians in order to improve minority recruitment, but they refused to provide their assistance and Ralph Harris simply ignored his obligation to assist the Recruitment Committee when he failed to attend several meetings. Apparently, Mr. Harris was not taking his obligation seriously.

Furthermore, African-American patrol officers also refused to help Kevin Barrington, the Springfield Police Department recruiter, with his recruitment efforts in the African-American community. Specifically, Officer Barrington was having "difficulty enlisting the assistance of black officers on the department who had previously displayed an interest in, and have stated they would consider, accompany him on recruiting events." (See City Exhibit No. 3 attached to this filing). Such events included a college visit to the University of Illinois at Chicago, Lewis University and attendance at the Black Expo in Springfield. Officer Barrington attended at least nine different recruiting events and prior to each event he contacted one or more of the African American officers for

20

their assistance but they failed to assist or accompany him to a single recruiting event.  Officer Barrington reported these findings to the Minority and Female Recruitment Committee and Sergeant Kevin Keen informed Deputy Chief Robert Williams who is African American about the lack of African-American patrol officer involvement.  The lack of commitment of current African-American officers and the NAACP to assist the City in its recruitment efforts is unacceptable and needs to change if the City is ever going to be successful in recruiting future African-American applicants.  The NAACP's lack of commitment in assisting the City with its recruitment efforts is a clear violation of paragraph 10 and 11 of the consent decree which states that the "Plaintiffs shall assist and cooperate in those recruitment efforts."  The Court has sufficient evidence to find the NAACP in violation of the consent decree and should do so without hesitation.

Plaintiffs Johnson and Holder's allegation that "the City failed at recruitment because it failed to follow a recruitment plan" is completely untrue.  Reviewing the efforts of the Minority and Female Recruitment Committee in Exhibit 8 of the City's Original Response to the contempt action shows an extensive recruitment plan that the City coordinated and followed, which has resulted in a number of minorities and woman joining the Police and Fire Department as discussed below.  These efforts including visiting colleges and universities with significant African American enrollment, attendance at community events geared towards

21

the African American community and recruitment efforts in general. The
Minority and Recruitment Committee was not chaired by or created by
Letitia Dewith-Anderson. She was merely invited to join the Recruitment
Committee and attended several meetings as the minutes of the meetings
reflect nor did she ever take a lead role in recruitment. Plaintiffs Holder
and Johnson have not provided any evidence or documents that support
the allegation that that she put together a recruitment plan. She merely
outlined the ideas that the members of the Minority and Female
Recruitment Committee had discussed in its meetings for Mayor Timothy
Davlin. She even admits in her memorandum that the City of Springfield
created a Minority and Female Recruitment Committee, not her
individually and that the Mayor's Office (Letitia Dewith-Anderson)
participated in two Committee meetings. (See City Exhibit No. 4). Her
self serving assertions in her deposition hardly meet the standard of clear
and convincing evidence that the City failed to followed her alleged
recruitment plan when she never proposed one.

In addition, for Plaintiffs Johnson and Holder to state that "[t]he
City failed at recruitment because it failed to adequately fund
recruitment" is untrue. Johnson and Holder allegation that "there was
no funding for recruitment in the fire department," is simply false. First,
the Fire Department had a part-time recruiter, Captain Mark Dyment,
who sought the assistance of African-Americans, Latinos and women in
the Fire Department to assist him with his recruitment efforts. The City

paid the salary of these individuals to help the Fire Department recruit minorities. In addition, Mr. Dyment attended several community events in the African American events, attended black church services and attended college visits with the full-time Police Department recruiter. (See City Exhibit No. 8 contained in Defendant's Original Response to Motion to Enforce Consent Decree, Court Document No. 97).

Plaintiff Johnson and Holder's allegation that the "City has no mechanism for recruitment in place at the present time" is incorrect. Mayor Davlin and James Donelan met with the NAACP on October 27, 2005, in an effort to employ a Minority and Female Recruiter with the City of Springfield as well as exchanging correspondence about the issue. (See City Exhibit No. 5). These efforts have been going on since September 2005 and continue to date. The Minority and Female Recruiter would coordinate the development and training of a recruitment team as well as collaborate with the Mayor's Minority and Female Recruitment Committee. The City requested and the Springfield Civil Service Commission approved a rule change at its November 2005 regular meeting that would allow for extension of the Police Eligibility List in three month increments instead of one year. This would allow the City to test and recruit on a more frequent basis with the goal of increasing minority and female applicants. The City asked Office of Budget and Management Director Ken Crutcher who is African-American to join the Recruitment Committee along with Victor Juarez, the Latino leader of

National Image, Inc.  In the past, Mr. Juarez has given out recruitment

packets to Latino leaders throughout the State of Illinois in an effort to

increase the number of Latino patrol officers and firefighters after the

City sent a representative to an Image meeting in June 2004, asking for

the group's assistance in recruiting minorities to the Police and Fire

Department.  The Springfield Fire Department including Fire Chief Bob

Bartnick attended the annual Image picnic in 2004 in an effort to talk to

Latino community members about joining the fire department.  Since

there are two active eligibility lists for both the Police and Fire

Departments in which the City is hiring police and fire applicants, there

has not been a need to meet in the last four months, but this does not

mean that the City has been lax in gearing up for the next recruitment

period in the future as demonstrated above.

### THE CITY HAS MADE TREMENDOUS STRIDES IN HIRING AFRICAN-AMERICAN PATROL OFFICERS SINCE SEPTEMBER 2001 TO THE PRESENT.

Since September 2001, the City has hired twelve African-American

male patrol officers, one African-American female patrol officer, two

Asian-American patrol officers, one Hispanic patrol officer, and thirteen

white female patrol officers.  (See City Exhibit No. 6 ).  More importantly,

sixteen percent of the new hires have been female since the consent

decree was entered.  Eighteen percent have been minorities and 14.94

percent have been African-American.  The City has either met or

exceeded the mandate of the consent decree that requires that the City

recruit and employ minorities and women reflecting their availability in the labor market.

One African-American applicant, Jonathan Davis, was offered a position with the Springfield Police Department as a patrol officer but requested a passover in December 2004 and a Hispanic male, Brian Wilson, also requested passover in August 2004 when he was offered a position with the Springfield Police Department as a patrol officer.  (See City Exhibit No. 6).  In the past two years, four African-American males were hired in 2005, seven white females were hired in 2005, one Hispanic male was hired in 2004, one Asian male was hired in 2004, two African-American males were hired in 2004 and one African-American female was hired in 2004.  Of the thirteen patrol officers hired in 2004, 38 percent were minorities.   Females made up 17 percent of the hiring class in 2005 and African-Americans made up 11.4 percent of the 2005 hiring class.

Tara Holder, the one African-American police officer who resigned recently, stated in her letter of resignation that her decision was "based on financial hardship and family issues [and] my reasons for leaving have been entirely financial hardship, personal and family issues."  (See City Exhibit No. 7 contained in Defendant's Original Response to Motion to Enforce Consent Decree, Court Document No. 97)  She continued by stating that "[t]he Field Training Program has been an excellent learning environment...I have enjoyed working with my fellow officers and I will

always consider them friends.  The City has made this an opportune experience I will not forget.  Thank you."  Ms. Holder not only thanked the City for allowing her the opportunity to become a patrol officer, but found it to be an excellent learning environment and considered her fellow officers regardless of their race to be her friends.  This letter establishes that the City of Springfield is providing a hostile-free working environment for its patrol officers regardless of race or gender.

Glen Austin, an African-American patrol officer hired in 2005, recently resigned and explained his reason as follows: "I found a position that allowed me to spend more time with my family.  Thank you for everything and I am sorry that things did not work out."  (See City Exhibit 7).  There is no mention of any type of racial discrimination or hostile work environment that would have led Mr. Austin to resign his position with the Springfield Police Department. All of this data and documents proves that the City is not discriminating against African-American in recruitment, hiring or other terms or conditions of their employment since the consent decree was entered.

### THE CITY HAS TAKEN GOOD FAITH STEPS IN HIRING MINORITY AND FEMALE FIREFIGHTERS.

The City made offers to two African-American applicants and two white female applicants during August 2005.  Nearly 24 percent of those applicants being made offers to become firefighters in the 2005 class were either minority or female.  Semaj Allen an African-American applicant requested a passover due to the illness of his mother and

Angela Hamm, a white female, also requested a passover.  Therefore, 13 percent of the hiring class for firefighters was either minority or female in 2005.  Both Mr. Allen and Ms. Hamm will be the first two candidates offered firefighter positions in the next round of hiring.  If they accept the positions the City of Springfield will be guaranteed another African-American and white female to its ranks of firefighters.

**THE CITY HAS TAKEN STEPS TO RECRUIT AND HIRE QUALIFIED MINORITIES AND WOMEN IN NUMBERS REFLECTING THEIR AVAILABILITY IN THE MARKETPLACE TO THE BEST OF ITS ABILITY.**

The City has taken steps which are consistent with its goal of recruiting and employing qualified African-Americans, other minorities and female applicants in numbers reflecting their availability in the labor market available to Springfield Police and Fire Department which is all that is required under the Consent Decree as discussed above.  Plaintiffs Holder and Johnson complain that the number of African-American firefighters and police officers are not adequate.  The City is not able to hire a specific number of minorities and females during each hiring period otherwise the City would be utilizing quotas which are not only unconstitutional, but more importantly are not required by the Consent Decree.  The City has already taken steps to recruit and employ minorities and women as discussed above and the City is doing everything legally possible for its numbers to reflect their availability in the labor market.   The use of banding by the City has resulted in three African-Americans and three white females joining the ranks of the Police

27

Department on December 19, 2005, and offers being made to two
African-American males and two white females in the Springfield Fire
Department in August 2005.

### THE CITY HAS PROVIDED ALL THE REQUIRED REPORTS REQUIRED UNDER THE CONSENT DECREE.

The allegation that the City has failed to provide several reports
required by paragraph 21 of the Consent Decree in a timely manner may
be true in certain instances but nonetheless the City has provided these
reports to the NAACP.  Thus, the City fulfilled its obligation under the
Consent Decree and more importantly cannot be found to be in violation
of the consent decree when it provided the information required under
the consent decree.  The untimely filing of some reports does not
demonstrate an intentional disregard of the reporting requirements
under the Consent Decree nor does it support the allegation made by
Plaintiffs Johnson and Holder that the City did not take the Consent
Decree seriously.  In fact, the City should be commended for its efforts to
increase the number minorities and women to the Police and Fire
Department.  Mr. Rose supports this assertion when he indicates that
the City has hired African-Americans in the Police Department at a rate
of 18 percent under the Consent Decree from 2001 to 2004.  (See Pg. 1,
Reply Memorandum in Support of Plaintiffs' Motion to Enforce the
Consent Decree).  This would be at a higher rate than is required under
paragraphs 10 and 11 of the Consent Decree.  In addition, the City
initiated a Minority and Female Recruitment Committee to obtain the

input of the NAACP, the Black Guardians (group of current African-American Police Officers), the Police and Fire Chief, members of their department, individuals from Human Resources and the Office of Community Relations in order to work together to increase the number of minorities and women in the Police and Fire Department.

Letitia Dewith-Anderson's assertion in her deposition that she informed city officials that the City was not in compliance with the reporting requirements under paragraph 21 of the Consent Decree is simply untrue. Ms. Dewith-Anderson's assertion in her deposition that she told Mayor Timothy Davlin, Jenifer Johnson and Frank Martinez about the reporting requirements under the Consent Decree is completely false. Attorney Frank Martinez and Jenifer Johnson never had any conversation with Ms. Dewith-Anderson about the reporting requirements in the Consent Decree nor did Mr. Martinez and Ms. Johnson attend any meeting with Mayor Davlin to discuss the consent decree reporting requirements as she stated in her deposition. Nevertheless, Ms. Dewith-Anderson stated in her deposition that "I believe it could have been an oversight," when she was discussing the reporting requirements under the Consent Decree.

Plaintiffs state that the City has violated paragraph 9 of the Consent Decree by engaging in employment practices which unlawfully discriminate against African-Americans for recruitment, hiring or other terms or conditions of employment of firefighters and police officers, but

has provided the Court with any type of proof whatsoever that this has

occurred.  Self-serving assertions by Plaintiffs Johnson and Holder,

Frank McNeil and Robert Williams do not provide clear and convincing

evidence of a violation of the Consent Decree.  In addition, Plaintiffs

Johnson and Holder provided examples of alleged discriminatory conduct

of individuals who have not intervened in this court action to assert

these interests nor has the court made a determination that they have

standing to assert a right to enforce the Consent Decree.  Furthermore,

Plaintiffs Johnson and Holder allege that "space does not permit a review

here of all the racially discriminatory acts committed by the City since

the entry of the Consent Decree, since they are numerous."

(Memorandum of Plaintiffs Johnson and Holder In Support of Amended

Motion, page 11).  The City is unable to defend itself against unknown

baseless allegations and said reference in the pleadings should be

stricken for lack of specificity.

**DISCOVERY HAS ALREADY TAKEN PLACE IN THIS CASE AND IT WOULD ONLY BEING USED TO HARRASS AND ANNOY THE CITY.**

The City has already responded to Plaintiffs Johnson and Holder's

Request for Production.  (See City Exhibit No. 8).  Johnson and Holder

have asked for every conceivable document that could have been created

in this case.  In addition, the City has provided all relevant documents

regarding this case in its filings and in response to the request to

produce.   Furthermore, discovery would only delay this matter and

inevitably lead to discovery disputes having to be resolved by this Court.

More importantly, there is no need for discovery because all the Plaintiffs have not met their burden to show that the City violated the Consent Decree.  See *Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 329 (7th Cir. 1991)("Once it becomes clear that additional proceedings are pointless, the court should bring the case to a close."); see also *Saukstelis v. City of Chicago*, 932 F.2d 1171, 1774 (7th Cir. 1991)(affirming district court's denial of preliminary injunction and directing entry of judgment for the defendant where plaintiff's case was without merit).

WHEREFORE, Defendant prays that this Court dismiss the Plaintiffs' Amended Motion to Enforce Consent Decree and Response to Amended Motion of Plaintiffs James E. Johnson and Tara Holder to Enforce Consent Decree and for Rule to Show Cause and any other relief the Court deems just.

Respectfully submitted,
CITY OF SPRINGFIELD, ILLINOIS,
Defendant,

By:    s/ Frank Martinez
Bar Number: 6225562
Assistant Corporation Counsel
Room 313, Municipal Center East
800 East Monroe Street
Springfield, Illinois 62701-1689
Telephone:  (217) 789-2393
Facsimile:   (217) 789-2397
Email: corporationcounsel@cwlp.com

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

THE SPRINGFIELD BRANCH, NATIONAL )
ASSOCIATION FOR THE ADVANCEMENT )
OF COLORED PEOPLE, et. al.,                    )
                                                                   )          No. 00-3136
                         Plaintiffs,                        )
                                                                   )
                         vi.                                    )
                                                                   )
CITY OF SPRINGFIELD, ILLINOIS, et. al.    )
                                                                   )
                         Defendant, and                )
                                                                   )
POLICE BENEVOLENT AND PROTECTIVE )
ASSOCIATION, UNIT NO. 5 and                  )
INTERNATIONAL ASSOCIATION OF           )
FIREFIGHTERS, LOCAL 37,                        )
                                                                   )
                         Third Party Defendants. )

**CERTIFICATE OF SERVICE**

        I hereby certify that on December 19, 2005, I electronically filed
Defendant's Response to Plaintiffs' Amended Motion to Enforce Consent
Decree and Response to Amended Motion of Plaintiffs Johnson and
Holder to Enforce Consent Decree and For Rule to Show Cause using the
CM/ECF system, which will send notification of such filing to the
following: David Rose, A. Courtney Cox, Ronald Stone and Donald
Craven.


                                        **s/ Frank Martinez**
                                        Bar Number 6225562
                                        Attorney for Defendant
                                        City of Springfield
                                        Assistant Corporation Counsel
                                        Room 313 Municipal Center East
                                        800 East Monroe Street
                                        Springfield, Illinois 62701-1689
                                        Telephone:  (217) 789-2393
                                        Fax:           (217) 789-2397
                                        Email:        corporationcounsel@cwlp.com

32