**E-FILED**
Monday, 19 December, 2005  03:56:38 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

THE SPRINGFIELD BRANCH, NATIONAL )
ASSOCIATION FOR THE ADVANCEMENT )
OF COLORED PEOPLE, et al, )
　　　　　　　　　　　　　　　　　　 )
　　　　　　　Plaintiffs, )
v. 　　　　　　　　　　　　　　　 )　　CASE NO.  00-3136
　　　　　　　　　　　　　　　　　　 )
CITY OF SPRINGFIELD, ILLINOIS,et al )
　　　　　　　　　　　　　　　　　　 )
　　　　　　　Defendant,and )
　　　　　　　　　　　　　　　　　　 )
POLICE BENEVOLENT AND PROTECTIVE )
ASSOCIATION, UNIT NO. 5 and )
INTERNATIONAL ASSOCIATION OF )
FIREFIGHTERS, LOCAL 37, )
　　　　　　　　　　　　　　　　　　 )
　　　　　　　Third-Party Defendants. )

### REQUEST FOR PRODUCTION FROM  PLAINTIFFS JOHNSON
### AND HOLDER TO DEFENDANT

Now come Plaintiffs, James E. Johnson and Tara Holder (formerly known as Tara Borders), by their attorneys, Hart & Hart, and request that the Defendant, City of Springfield, produce the following within 30 days:

***NOTE: The term "documents" includes all information located on electronic media.***

1. A copy of each report prepared by Defendant pursuant to paragraph 21 of the Consent Decree entered herein on September 5, 2001.

2. All communications between Defendant and Plaintiff(s) and/or Plaintiffs' counsel regarding the reports referred to in paragraph 21, including written



**EXHIBIT**
#8

communications, verbal communications memorialized in some fashion in writing, and documents maintained in electronic form.

3. All communications between Defendant and Plaintiff(s) and/or Plaintiffs' counsel regarding the Consent Decree entered September 5, 2001, including written communications, verbal communications memorialized in some fashion in writing, and documents maintained in electronic form, to the extent not otherwise produced in response to request number 2 above.

4. All communications among or between an employees (or former employees), including in the term employees elected officials) of Defendant regarding the Consent Decree entered September 5, 2001, including written communications, verbal communications memorialized in some fashion in writing, and documents maintained in electronic form, including specifically all communications originated by Letitia Dewith-Anderson regarding the Consent Decree entered September 5, 2001.

5. All documents pertaining to steps taken by Defendant pursuant to paragraph 10 of the Consent Decree entered herein on September 5, 2001.

6. All documents pertaining to the implementation and maintenance of a recruiting program by Defendant pursuant to paragraph 11 of the Consent Decree entered herein on September 5, 2001, including specifically all documents from Letitia Dewith-Anderson regarding recruitment of minorities.

7. All documents pertaining to meetings held pursuant to paragraph 12 of the Consent Decree entered herein on September 5, 2001.

8. All records in possession of Defendant maintained pursuant to paragraph 19 of the Consent Decree entered herein on September 5, 2001.

9. A copy of all forms, both blank forms and completed forms, utilized by Defendant pursuant to paragraph 20 of the Consent Decree entered herein on September 5, 2001.

10. A copy of each list prepared by Defendant pursuant to paragraph 21 of the Consent Decree entered herein on September 5, 2001.

11. All communications between Defendant and Plaintiff(s) and/or Plaintiffs' counsel regarding the lists referred to in paragraph 21, including written communications, verbal communications memorialized in some fashion in writing, and documents maintained in electronic form.

> HART & HART
> Attorneys for Plaintiffs
> Johnson and Holder

> BY:  s/A. COURTNEY COX

A. COURTNEY COX
Illinois Bar #06182590
HART & HART
Attorneys  at Law
P. O. Box 937
Benton, IL 62812-0937
Telephone: 618-435-2962
Telefax: 618-435-2962
Email: courtc@harthart.com

## PROOF OF SERVICE

The undersigned hereby certifies he mailed a copy of the foregoing request to the following on September 6, 2005.

Jenifer Johnson
Corporation Counsel
City of Springfield
Room 100, Municipal Center West
300 South Seventh Street
Springfield, Illinois 62701-1680

Donald M. Craven
Attorney for IAF Local #37
1005 North 7th Street
Springfield, IL 62702

Ronald J. Stone
Attorney for PB&PA Unit #5
725 South 4th St.
Springfield, IL 62703

David L. Rose
Rose & Rose
1320 19th Street, N.W., Suite 601
Washington, D.C.  20036

He also certifies that he caused a copy of the foregoing to be sent by email to Jenifer Johnson  at jljohnson@cwlp.com on September 6, 2005.

S/A. COURTNEY COX

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

THE SPRINGFIELD BRANCH, NATIONAL )
ASSOCIATION FOR THE ADVANCEMENT )
OF COLORED PEOPLE, et. al.,            )
                                                    )        No. 00-3136
                Plaintiffs,                     )
                                                    )
        v.                                          )
                                                    )
CITY OF SPRINGFIELD, ILLINOIS, et. al.  )
                                                    )
                Defendant, and               )
                                                    )
POLICE BENEVOLENT AND PROTECTIVE )
ASSOCIATION, UNIT NO. 5 and          )
INTERNATIONAL ASSOCIATION OF        )
FIREFIGHTERS, LOCAL 37,               )
                                                    )
                Third Party Defendants. )

## DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION FROM PLAINTIFFS JOHNSON AND HOLDER

Defendant, City of Springfield, by and through their attorneys,

Jenifer L. Johnson, Corporation Counsel and Frank Martinez, Assistant

Corporation Counsel hereby respond to Plaintiffs' Johnson and Holder

Request for Production as follows:

1.      A copy of each report prepared by Defendant pursuant to

        paragraph 21 of the Consent Decree entered herein on

        September 5, 2001.

        Response: See Defendant's Response to Plaintiffs' Motion to

        Enforce Consent Decree and Application for an Order to Show

        Cause and Response to Motion of Plaintiffs James E. Johnson

and Tara Holder to Enforce Consent Decree and for Rule to Show Cause and attachments to said Response.

2.    All communication between Defendant and Plaintiff(s) and/or Plaintiff's counsel regarding the reports referred to in paragraph 21, including written communication, verbal communications memoralized in some fashion in writing, and documents maintained in electronic form.

Response:  See response to request number 1.

3.    All communications between Defendant and Plaintiff(s) and/or Plaintiffs' counsel regarding the Consent Decree entered September 5, 2001, including written communications, verbal communications memorialized in some fashion in writing, and documents maintained in electronic form, to the extent not otherwise produced in response to request number 2 above.

Response: See response to request number 1.

4.    All communications among or between an employees (or former employees), including in the term employee elected officials) of Defendant regarding the Consent Decree entered September 5, 2001, including written communications, verbal communications memorialized in some fashion in writing, and documents maintained in electronic form, including specifically all communications originated by Letitia Dewith-Anderson

regarding the Consent Decree regarding the Consent Decree entered September 5, 2001.

Response: See response to request number 1 and attached memorandum from Letitia Dewith-Anderson.

5. All documents pertaining to steps taken by Defendant pursuant to paragraph 10 of the Consent Decree entered herein on September 5, 2001.

Response: See response to request number 1.

6. All documents pertaining to the implementation and maintenance of a recruiting program by Defendant pursuant to paragraph 11 of the Consent Decree entered herein on September 5, 2001, including specifically all documents from Letitia Dewith-Anderson regarding recruitment of minorities.

Response: See response to request number 1.

7. All documents pertaining to meetings held pursuant to paragraph 12 of the Consent Decree entered herein on September 5, 2001.

Response: See response to request number 1. Additional documents relevant to this request are available for inspection and may be copied at Plaintiffs' expense.

8. All records in possession of Defendant maintained pursuant to paragraph 19 of the Consent Decree entered herein on September 5, 2001.

Response: Objection. The impact of the City's tests and other
selection devices it used or plans to use upon applicants is not
the subject of the contempt action filed with the Court and is
therefore not relevant to the issued raised in this case. In
addition, you were denied this information in the *Davis v.
Harris*, et. al., 03-3007, by Judge Byron G. Cudmore on July
22, 2005. It appears you are trying to circumvent Judge
Cudmore's order by requesting these documents in this case,
since you were denied these documents in the Davis case cited
above.

9.   A copy of all forms, both blank forms and completed forms,
utilized by Defendant pursuant to paragraph 20 of the Consent
Decree entered herein on September 5, 2001.

Response: You have been provided the blank form previously in
*Carson v. Davlin*, et.al., 04-L-225 (See Motion to Dismiss,
Exhibit 3). You requested this same form in *Davis v. Harris*, et.
al., and were advised of this same fact. The completed forms
are not the subject of the contempt action filed with the Court
and is therefore not relevant to the issued raised in this case.
This case should not be used as a fishing expedition to look for
alleged violations of the Consent Decree that you did not raise
nor did you provide the Court with a factual basis in your
contempt motion. In addition, you were denied the request for

the form utilized by the City in the *Davis v. Harris*, et. al., 03-

3007, by Judge Byron G. Cudmore on July 22, 2005. It

appears you are trying to circumvent Judge Cudmore's order by

requesting these documents in this case, since you were denied

these documents in the Davis case cited above.

10.   A copy of each list prepared by Defendant pursuant to

paragraph 21 of the Consent Decree entered herein on

September 5, 2001.

Response: This is a duplicate request. See Request number 1,

2, and 3 and the response provided therein.

11.   All communications between Defendant and Plaintiff(s) and/or

Plaintiffs' counsel regarding the lists referred to in paragraph

21, including written communications, verbal communications

memorialized in some fashion in writing, and documents

maintained in electronic form.

Response:  See response to request number 1.


                                    **RESPECTFULLY SUBMITTED,**
                                    **CITY OF SPRINGFIELD, ILLINOIS.**

                                    *Frank Martinez*
                                    **Frank Martinez**
                                    **Assistant Corporation Counsel**

Jenifer Johnson
Corporation Counsel
Frank Martinez
Assistant Corporation Counsel
Room 313, Municipal Center East
800 E. Monroe Street
Springfield, Illinois 62701
Telephone: (217) 789-2393
Fax Number:(217) 789-2397

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

THE SPRINGFIELD BRANCH, NATIONAL )
ASSOCIATION FOR THE ADVANCEMENT )
OF COLORED PEOPLE, et. al., )
)
           Plaintiffs, )    No. 00-3136
)
           v. )
)
CITY OF SPRINGFIELD, ILLINOIS, et. al. )
)
           Defendant, and )
)
POLICE BENEVOLENT AND PROTECTIVE )
ASSOCIATION, UNIT NO. 5 and )
INTERNATIONAL ASSOCIATION OF )
FIREFIGHTERS, LOCAL 37, )
)
           Third Party Defendants. )

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2005, I electronically filed the foregoing Certificate of Service indicating that the Defendant's Response to Request for Production from Plaintiffs Johnson and Holder was served upon the Plaintiffs with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: David Rose, A. Courtney Cox, Ronald Stone and Donald Craven.

           **s/ Frank Martinez**
           Bar Number 6225562
           Attorney for Defendant
           City of Springfield
           Assistant Corporation Counsel
           Room 313 Municipal Center East
           800 East Monroe Street
           Springfield, Illinois 62701-1689
           Telephone:  (217) 789-2393
           Fax:        (217) 789-2397
           Email:      corporationcounsel@cwlp.com



# IN THE CIRCUIT COURT
## OF THE SEVENTH JUDICIAL CIRCUIT
### SANGAMON COUNTY, ILLINOIS

RANDY POORMAN,                            )
WILLIAM KALTENBACH,                       )
RICHARD RIEMANN,                          )        **CASE NO. 03 MR 158**
JOHN MEREDITH,                            )
MATTHEW VLAHOVICH,                        )        **AND CASE NO. 03 CH 172**
DAVID LAUB, AHREN COADY,                  )
LAKESHIA FOX-KIMMINS,                     )
and WILBUR DAY,·                          )
                                          )
       **Plaintiffs,**                  )
                                          )
      **v.**                          )
                                          )
SPRINGFIELD CIVIL SERVICE                 )
COMMISSION, LARRY JONES,                  )
KATHERINE STARKS-LAWRENCE,                )
HENRY HARMS, GREG AKERS,                  )
BOB JASMON, THE CITY·OF                   )
SPRINGFIELD, and FIRE CHIEF               )
RON HASARA,·                              )
                                          )
       **Defendants.**                  )

**FILED**

SEP 2 5 2003  FR 4

Clerk of the
Circuit Court

**EXHIBIT**

tables'   #9

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO COMPLAINT IN ADMINISTRATIVE REVIEW

    **NOW COME**, the Defendants, Springfield Civil Service Commission, Larry Jones,

Katherine Starks-Lawrence, Henry Harms, Greg Akers, Bob Jasmon, The City of Springfield and

Fire Chief Ron Hasara, by and through their attorneys, Jenifer L. Johnson, Corporation Counsel

and Frank Martinez, Assistant Corporation Counsel and submit their response in opposition to

the Motion to Remand.

### FACTS

    On April 3, 2003, the Springfield Civil Service Commission reviewed approximately 42

applicants' background investigations and psychological screenings before approving the

background investigations and psychological screenings for 20 firefighters candidates.  (Tr. Pg.

16).  The Springfield Civil Service Commission removed Plaintiffs William Kaltenbach, Richard

Riemann, Matthew Vlahovich, David Laub and Wilbur Day from the Firefighter's Eligibility

List due to an unsatisfactory psychological evaluation conducted by Dr. Michael Campion. In

addition, Plaintiffs Randy Poorman, John Meredith, Ahren Coady and Lakeshia Fox-Kimmons

were removed from the Firefighters Eligibility List because of an unsatisfactory background

investigation.

The Springfield Civil Service Commission is given the power pursuant to Civil Service

Rule 5.8 A. to remove any applicant from the Firefighters Eligibility List after a determination is

made that the result of a background investigation and/or psychological evaluation is

unsatisfactory. (Tr. pg. 50).

Each Plaintiff removed from the Firefighters Eligibility List was sent a letter indicating

that their removal was based upon information provided in their background investigation and/or

psychological screening. (Tr. Pg. 116).

**STANDARD OF REVIEW**

It is well established that the scope of judicial review under the Administrative

Review law is quite limited. The findings of fact of the administrative agency are

deemed to be prima facie true and correct and must be upheld unless they are against the

manifest weight of the evidence. See *735 ILCS 5/3-110*; *City of Collinsville v. Illinois

State Labor Relations Board*, 329 Ill.App.3d 409, 416, 767 N.E.2d 886, 263 Ill.Dec. 160

(5th Dist. 2002). The Illinois Supreme Court has stated that "a decision is against the

manifest weight of the evidence only when an opposite conclusion is clearly evident."

*Finnerty v. Personnel Board of City of Chicago*, 303 Ill.App.3d 1, 11, 707 N.E.2d 600,

236 Ill.Dec. 473 (5th Dist. 1999) citing *City of Belvidere v. Illinois State Labor Relations

Board*, 181 Ill.2d 191, 204, 229 Ill.Dec. 522, 692 N.E.2d 295, 302 (1998); *Jack Bradley,

Inc., Department of Employment Security*, 146 Ill.2d 61, 73, 165 Ill.Dec. 727, 585

2

N.E.2d 123, 128 (1991). The Illinois Supreme Court has also stated that "[t]he mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative finding. The reviewing court may not substitute its judgment for that of the administrative agency. If the record contains evidence to support the agency's decision, it should be affirmed." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill.2d 76, 81 606 N.E.2d 1111, 180 Ill.Dec. 34 (1992). If there is *any* evidence that fairly supports the agency's finding, unless against the manifest weight of the evidence, the agency's decision must be sustained on review. *Farmers State Bank of McNabb v. Department of Employment Security*, 216 Ill.App.3d 633, 639, 576 N.E.2d 532, 159 Ill.Dec. 863 (3rd Dist. 1991).

In other words,

> "A decision is contrary to the manifest weight of the evidence only when, after reviewing the evidence in the light most favorable to the administrative agency, the court determines that no rational trier of fact could have agreed with the agency's decision...If the record contains any evidence supporting the administrative agency's decision, the decision must be sustained on review. *Farmers State Bank of McNabb* at 216 Ill.App.3d 633, 639.

In addition, "Courts may not interfere with the discretionary authority of administrative agencies unless the authority is exercised in an arbitrary or capricious manner or the administrative decision is against the manifest weight of the evidence" and "[w]ide latitude must be given to an agency's exercise of its discretion." *Farmers State Bank of McNabb* at 216 Ill.App.3d 633, 639.

## THE PLAINTIFFS WERE REMOVED FROM THE FIREFIGHTERS ELIGIBLITY LIST FOR LEGITIMATE NON-DISCRIMINATORY REASONS.

The City conducted a thorough background investigation of each applicant applying for a firefighter position with the City of Springfield. An applicant's criminal record, credit history and driving record are checked as well as employment and personal references. In addition, Dr.

3

Michael Campion conducts a thorough psychological evaluation of each applicant to determine whether an applicant is psychological fit to handle the responsibilities of a firefighter.   The psychological evaluation "screens out candidates who would result in a failure to perform essential job activities or to perform them in such a manner as to risk the health and safety of others." (Tr. pg. 73).   The recommendations made by Dr. Campion are made with a reasonable degree of psychological certainty.  (Tr. pg. 73).

Dr. Campion is extremely qualified to perform psychological evaluations for public safety personnel given his educational, employment and professional experience as indicated in his Curriculum Vitae (Tr. pgs. 57-66).  His client list includes over 100 companies, agencies or departments with offices in Illinois, Indiana, Minnesota, Missouri and Texas.  (Tr. pg. 57).   Dr. Campion has also conducted over 5,000 police and fire entrance, fitness for duty, special assignment and executive officer selection screenings.  (Tr. pg. 65).  Dr. Campion has lectured extensively about psychological testing and screening of police and firefighter applicants.

The Plaintiffs do not raise any objection regarding Dr. Campion's qualifications or the manner in which he administered the psychological testing in their Complaint or subsequent pleadings.

The following applicants were found to be unqualified to become firefighters based on the unsatisfactory results of their psychological evaluation and based on this information they were removed from the Firefighters Eligibility List by the Springfield Civil Service Commission:

**William Kaltenbach**

Plaintiff Kaltenbach was found to be unqualified at the time of his psychological assessment. (Tr. pg. 210-214).  Dr. Campion indicated in the psychological evaluation of William Kaltenback that Kaltenbach did not meet the minimum psychological standards for public safety employment. (Tr. pg. 214).  Dr. Campion found that Katlenbach tends to be

4

impulsive and doesn't consider the consequences of his actions.  (Id.)   In addition, Dr. Campion

stated that under stress, Kaltenbach may exhibit poor judgment.  (Id.)  A firefighter is under a

great deal of stress when fighting fires and rescuing citizens who are trapped in burning

structures.  One wrong move and the lives of innocent citizens or fellow firefighters could be in

jeopardy.

In addition, Dr. Campion found that Kaltenbach appears to have some detached,

skeptical, or even anti-social views about his position in the world.  (Tr. pg. 212).  He may feel

that life is usually unfair, and that self-serving motives are most appropriate. (Id.)  Furthermore,

Dr. Campion indicated that Kaltenbach may feel justified in using any means possible in order to

"beat the system." (Id.)  Dr. Campion also notes that Kaltenbach endorsed some items

suggesting possible difficulties relating to or working with members of the opposite sex.

**Richard Riemann**

Plaintiff Riemann did not meet the acceptable minimum psychological standards for

public safety employment and was found to be unqualified at the time of his assessment.  (Tr. pg.

342).  The psychological evaluation found that Riemann may have an inflated self-concept,

which may affect his ability to be supervised.  (Id.)   The evaluation also concludes that at times,

Riemann may over-estimate his abilities.  (Tr. pg. 341).  Thus, the Springfield Civil Service

Commission had a legitimate non-discriminatory reason for not approving Riemann's

psychological evaluation for not meeting the acceptable minimum psychological standards.

**Matthew J. Vlahovich**

Plaintiff Vlahovich was found to be unqualified to be a firefighter for failing to meet

acceptable minimum psychological standards for public safety employment.  (Tr. pg. 749).  Dr.

Campion found Vlahovich tends to have aggressive tendencies and lacks patience when dealing

with others.  (Id.)  Vlahovich admitted in his interview with Dr. Campion that one of his greatest

weaknesses is patience. (Tr. pg. 747). In addition, Vlahovich may be rigid in his approach to problem-solving. (Tr. pg. 749).

Dr. Campion also found that Vlahovich "does not appear to be inclined towards the learning of academic subjects." (Tr. pg. 748). Dr. Campion went on to state "it may be difficult for him to study and/or he may not have been very interested in some required school subjects. Since schoolwork may not be this individual's greatest strength, job training may be beneficial in areas where skills other than book learning are most valued. This person may have to work somewhat harder than others in order to successfully complete the academic requirements of a job training program." (Id.)

### David Laub

Plaintiff Laub was found to unqualified to become a firefighter because he does not meet the acceptable minimum psychological standards for public safety employment according to Dr. Campion. (Tr. pg. 926). Dr. Campion found that Laub may be rigid in his approach to problem solving and does not appear to be a good fit at this time. (Id.)

Dr. Campion also found that Laub "has been guarded, rigid and/or defensive in his responses. He has denied minor faults and may be unwilling to acknowledge shortcomings or mistakes. This shows a lack of personal insight, some immaturity, an intolerance of the possibility of deviance in himself or in the deviant attitudes and behaviors of others, and/or a strong desire to make a positive impression." (Tr. pg. 924).

### Wilbur Day

Plaintiff Day was found to be unqualified at the time of the psychological assessment and did not meet acceptable minimum psychological standards for public safety employment. (Tr. pg. 73). The psychological evaluation showed that Day exhibited "cynical views about dealing with society. He feels that life is generally unfair, that people will take advantage of any

6

situation if given the chance, and that societal constraints are irrelevant. He may feel justified in taking risks or "bending the rules: in order to "beat the system." Such attitudes are frequently associated with a pattern of antisocial activity. According to the item responses, he may be a restless, overactive individual who may have difficulty controlling his impulses. He may be over talkative, aggressive, and/or impatient. He has endorsed some items suggesting possible difficulties relating to or working with members of the opposite sex." (Tr. pg. 72).

It should be noted that the background investigation found that Day had four speeding convictions since May 14, 1999 and had 17 accounts placed into collections totaling $28,157.00 resulting in numerous garnishments and charged off accounts. (Tr.pg. 97, 99, 124-127). Day's credit report indicates that he was past due 90 days or more on 46 separate occasions involving 11 of his creditors. (Tr. pg. 124-126). In addition, Day failed to disclose on his Personal History Questionnaire that he was a party to a civil action involving a creditor. (Tr. pg.146.) The credit report reveals that a judgment was taken against Day in October of 1998 in the amount of $1,928.00. (Tr. pg 126).

Even though Day's background investigation was not the reason for his removal it is still significant information that would have provided an additional reason for his removal from the Firefighters Eligibility List for failing to disclose the judgment on his background questionnaire and based on the results of his credit report.

The Springfield Civil Service Commission will not approve an applicant if the applicant is found to be Unqualified by not meeting the minimum psychological standards for public safety employment as determined by the extensive testing administered by Dr. Campion. This has been the practice of the Springfield Civil Service Commission for approximately the past six years. (See Affidavit of Larry Jones, Exhibit One). For the City to do otherwise could lead to a possible negligent hiring tort claim for employee misconduct relating to psychological factors

known at the time of hire resulting in harm to another city employee or members of the public. See *Moskowitz v. City of Chicago*, 1993 WL 478938, (N.D. Ill. 1993) (negligent hiring exists where an employer's hiring of someone it knew, or should have known, was unfit for the job, results in injury to plaintiff); *Bates v. Doria*, 150 Ill.App.3d 1025, 502 N.E.2d 454, 104 Ill.Dec. 191 (2nd Dist. 1986) (well established cause of action exists against an employer for negligent hiring an individual, he knew or should have known, was unfit for the job so as to create a danger of harm to third person); *Johnson v. Mers*, 279 Ill.App.3d 372, 664 N.E.2d 668, 216 Ill.Dec. 31 (2nd Dist. 1996) (an action for negligent hiring can be maintained even where an employee commits a criminal or intentional act which is outside the scope of employment).

Furthermore, the Springfield Civil Service Commission does not have the collective expertise to evaluate an applicant independently to determine whether he or she meets the psychological standards for employment.

Thus, the Springfield Civil Service Commission's decision not to approve the appointment of Plaintiffs Kaltenbach, Reimann, Vlahovich, Laub and Day due to unsatisfactory psychological evaluations was not against the manifest weight of the evidence nor is an opposite conclusion clearly evident based on the results of the said evaluation. For the Court to rule otherwise would result in the Court substituting its own opinion for that of the Springfield Civil Service Commission, which is not proper. See *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill.2d 76, 81 606 N.E.2d 1111, 180 Ill.Dec. 34 (1992) (the reviewing court may not substitute its judgment for that of the administrative agency).

The record contains evidence to support the Springfield Civil Service Commission decision to remove Plaintiffs Kaltenbach, Riemann, Vlahovich, Laub, and Day from the Firefighters Eligibility List for failing their psychological evaluation. Therefore, said decision should be affirmed by this court. See *Farmers State Bank of McNabb v. Department of*

8

*Employment Security*, 216 Ill.App.3d 633, 576 N.E.2d 532, 159 Ill.Dec. 863 (3rd Dist. 1991) (if

there is *any* evidence that fairly supports the agency's finding, unless against the manifest weight

of the evidence, the agency's decision must be sustained on review).

The following individuals were removed from the Firefighter's Eligibility List as the

result of an unsatisfactory background investigation:

**<u>Randy Poorman</u>**

Plaintiff Poorman falsely told Springfield Firefighter Andy Sandhaas, who was working

off-duty as a Leland Grove police officer, on February 23, 2003 that he was an ex-federal agent

and he was currently employed as a Springfield fireman. (Tr. pg. 97). Neither statement was

true. Sandhaas was responding to a call when he was informed by Springfield dispatch that a

federal officer was detaining a woman who was allegedly beating her child at the Esquire

Theater. (Id.).

When Sandhaas arrived at the scene he met with Poorman who identified himself as an

ex-federal officer and that he was currently employed by the Springfield Police Department.

(Id.) Poorman later changed his story and indicated he was not a federal officer, but an ex-

military policeman. (Id.) Poorman once again told Sandhaas that he worked for the Springfield

Fire Department. (Id.) When asked which station house he was currently working at, Poorman

indicated he was in training. (Id.) This statement was also untrue. Poorman has never been

employed by the City of Springfield as a firefighter. Poorman's actions of impersonating a

federal agent and lying about his place of employment indicates serious character flaws

warranting his removal from the Firefighters Eligibility List. Furthermore, the record contains

sufficient evidence to show that Poorman could have been arrested for False Personation of a

Police Officer. Pursuant to 720 ILCS 5/32-5.1, a person who knowingly and falsely represents

himself to be a peace officer of any jurisdiction commits a Class 4 felony.

Springfield Police Officer Brittany Hand who went to school with Poorman provided a personal reference and indicated that Poorman "acts as though he should be treated better than other people, …uses poor judgment and may abuse [his] position,…[and] said he was a federal agent when in fact he was not." (Tr. pg. 98). Furthermore, Officer Hand indicated that Poorman had been at other calls for service that she found rather odd. In addition, Poorman was asked to resign from his position with the Crowne Plaza when he was employed doing hotel security work. (Tr. pg. 84). Crowne Plaza personnel indicated they would not rehire Poorman. (Id.) Poorman provided false information when he indicated in his Personal History Questionnaire that he left Crowne Plaza due to military deployment for an extended period of time and for a better career opportunity when in fact he was asked to resign his position. (Tr. pg. 120). In addition, Poorman told Dr. Campion that he had never been fired or asked to resign by his previous employers when said information was false. (Tr. pg. 70) An unfavorable employment and personal reference and failing to disclose information on a background questionnaire standing alone are sufficient legitimate non-discriminatory reasons for removing Poorman from the Firefighters Eligibility List. See *Kehrer v. City of Springfield,* 104 F.Supp.2d 1001, 1008 (C.D. Ill. 2000).

**John Meredith**

Plaintiff Meredith received an under honorable discharge for unsatisfactory participation in the Army National Guard for failing to report to duty and not reporting his whereabouts to the Guard. (Tr. pg. 526). According to SSGT Erbe of the Army National Guard, where Meredith served from 1994 to 1996, Meredith never showed up for his weekend drill in April 1996 and did not contact the Guard to inform them of his whereabouts, making him AWOL. (Id.) Meredith's AWOL status continued in May and June of 1996 and he ignored two certified letter sent to him by the Guard asking that he make contact with them to establish his whereabouts. (Id.) In all,

10

Meredith had accrued 12 unexcused absences from his Guard duty within a one-year period prior

to June 1996. (Tr. pg. 538). Meredith received Non Judicial Punishment, which resulted in a

reduction of his rank to Private (E-2) and was given what is referred to as an Under Honorable

Discharge. (Tr. pg. 526, 534-538).

Meredith failed to disclose this information in question 48 of the Personal History

Questionnaire when asked if he had "ever received any disciplinary action while in the military

service, either active or reserve." (Tr. pg. 621). He answered the question "no," which was a

false statement. (Id.)

When Meredith was contacted about this false statement by Detective Dane Cookson, he

indicated he was unaware that he had received the Under Honorable discharge or the Non

Judicial punishment. (Tr. pg. 527). The Army National Guard contradicted Meredith's version

of the facts by faxing the City a copy of the documents that were sent to Meredith indicating his

reduction in rank, the imposition of non judicial punishment and informing him of the proposed

separation from the Guard with the designation of "Under Honorable Conditions" otherwise

known as a General Discharge for unsatisfactory participation. (Tr. pg. 535-539). Once again

Meredith provided false information to the City when he was asked to clarify the situation.

When Meredith attempted to re-enlist in the Navy Reserves, he wrote a letter to the Naval

Reserve Command dated February 2, 2000 acknowledging that he had received notice of his

discharge and had knowledge of his demotion to an E-2. (Tr. pgs. 527 and 546). Meredith's

statements to Detective Cookson when the detective asked him about the conditions of his

discharge and Non Judicial Punishment were false when he indicated that he had no knowledge

of his discharge or non-judicial punishment when he wrote a letter to the Navy Reserves in order

to re-enlist. (Tr. pg. 527).

11

The record clearly reflects that Meredith falsified his application and provided numerous false statements to the City about the disciplinary action taken against him while he was in the military in his conversation with Detective Cookson. In addition, Meredith exhibited a lack of responsibility in failing to acknowledge the letters sent to him about his twelve unexcused absences and possible removal from the Army National Guard or even make a telephone call or write a letter explaining his whereabouts. The Civil Service Commission's decision to remove Meredith from the Firefighters Eligibility List is supported by substantial evidence existing in the record that reflects Meredith's untruthful statement in his Personal History Questionnaire, continued false statements given to Detective Cookson when questioned about inaccuracies in his application and the lack of work ethic exhibited by Meredith in not reporting to duty as required by the Army National Guard. See *Kehrer v. City of Springfield,* 104 F.Supp.2d 1001, 1008 (C.D. Ill. 2000) (failing to disclose information on a background questionnaire is a legitimate non-discriminatory reason for removing an applicant from an eligibility list).

**Ahren Coady**

Plaintiff Coady was arrested at Chantilly Lace nightclub on May 30, 2002 at 1:48 a.m. for attempting to use a friend's identification to gain entry into a 21 year old and over club. (Tr. pg. 1246). Coady was given a notice to appear for a misdemeanor offense of Unlawful Use of an Illinois Identification Card and was subsequently released from the scene. (Id.) Coady admitted to the doorman at Chantilly Lace that the identification card that he was using to gain entrance into the nightclub was not his and actually handed the doorman his actual driver's license showing that he was underage. (Tr. pg. 1270). The doorman then called the Springfield Police Department for assistance. Coady was placed in the back seat of the squad car and was told he had been arrested for unlawful use of an Illinois Identification Card and was advised that said offense is a Class A misdemeanor. (Id.)

12

Shortly after the May 30 incident, Coady was issued an ordinance violation citation by the City of Charleston, Illinois for the purchase/acceptance of alcohol by a minor that occurred on August 31, 2002. In this incident, Coady attended a party where guests paid three dollars in order to obtain a plastic cup that could be used to obtain beer from a keg that was located in the kitchen of the residence. (Tr. pg. 1275-1277). A Portable Breath Test (PBT) result showed that Coady had a blood alcohol content of .072, demonstrating that Coady was engaging in underage consumption of alcohol. (Tr. pg. 1283). Coady pled guilty to the city citation and was fined $200.00 plus costs. (Tr. pg. 1364).

Coady failed to indicate that he was arrested or charged with a criminal offense in response to question 76 of the Personal History Questionnaire, nor did he indicate that he was a party in a criminal or civil action when he responded to question 80 of said questionnaire. (Tr. pg. 1396 and 1398). When Coady was contacted to explain the false statements made on his Personal History Questionnaire, he indicated he did not realize he was arrested regarding the Chantilly Lace incident. (Tr. pg. 1247). Coady's version of the facts is contradicted by the police report that clearly indicated that Coady was advised that he was being placed under arrest. (Tr. pg. 1270).

When Coady was asked about the city citation he received in Charleston, Illinois, Coady indicated it was an ordinance violation and he did not intentionally omit the information. (Tr. pg. 47). Question 76 of the Personal History Questionnaire specifically asks an applicant if he or she had ever been arrested or charged with a criminal offense and Question 80 asks if an applicant was a party to a criminal or civil action (Tr. pg. 1396 and 1398). Coady clearly concealed this information from the City. As stated in *Kehrer*, failing to disclose information on a background questionnaire is a legitimate, non-discriminatory reason for removing an applicant from the Firefighters Eligibility List. (See *Kehrer* at 1008).

13

In addition, Coady received eight traffic violations sine May 1998 and had his license suspended for a four-month period from January 2002 to April 2002. (Tr. pgs. 1242-1245 and 1317). Coady's underage drinking on two occasions within a four-month period occurring within one year of the Commission's review of his background investigation, falsifying his background questionnaire and his numerous traffic violations provide more than enough evidence to support the Springfield Civil Service Commission's decision to remove Coady from the Firefighters Eligibility List. (See *Abrahamson* at 81) (if the record contains evidence to support the agency's decision, it should be affirmed).

**Lakeshia R. Fox-Kimmins**

Plaintiff Fox-Kimmins failed to disclose two arrests and numerous traffic violations on her Personal History Questionnaire; had a judgment entered against her for failing to pay a cellular telephone bill; and had seven accounts sent for collections totaling $1,086.00. (Tr. pg. 1096-1098, 1101 and 1190-1194). In addition, Fox-Kimmins was arrested in 1995 for obstructing a police officer but failed to mention this on her Personal History Questionnaire as required by question 76. (Tr. pg. 1097, 1098,1136 and 1199) She answered no to Question 76, which asks if an applicant has ever been arrested or charged or convicted of a criminal offense. (Tr. pg. 1136). After being contacted about her false statement, Fox-Kimmins admitted that she was arrested due to her mouth when she became very verbal with police officers regarding a family dispute. (Tr. pg. 1098). Fox-Kimmins also failed to disclose her arrest and subsequent conviction for Driving with a Suspended License on April 8, 1997 on her Personal History Questionnaire. (Tr. pg. 1097, 1098 and 1186). When Fox-Kimmins was called about her false response, she was given a second opportunity to disclose her arrest and conviction for Driving with a Suspended License but failed to do so. (Tr. pg. 1098). The arrest and conviction was

14

found when Detective Tanessa L. McCormick confirmed Fox-Kimmons' driving abstract with personnel in Logan County. (Id.).

Question 75 of the Personal History Questionnaire required Fox-Kimmins to disclose all arrests and convictions for traffic violations within the past five years. (Tr. pg. 1135). Fox-Kimmins only disclosed one speeding ticket. (Id.) The background investigation revealed 10 traffic violations resulting in nine convictions. (Tr. pg. 1096). Once again, Fox-Kimmins falsified her Personal History Questionnaire by failing to disclose truthful information.

The credit report of Fox-Kimmins reveals she was past due 90 days or more on 84 separate occasions involving 12 creditors. (Tr. pg. 1190-1194). Fox-Kimmins also had seven accounts sent to collections. (Tr. pg. 1193 and 1194).

The lack of honesty exhibited by Fox-Kimmins by failing to disclose information on her Personal History Questionnaire about her previous arrests and numerous traffic citations along with the results of her credit report provided more than enough justification for removing her from the Firefighters Eligibility List. See *Kehrer v. City of Springfield,* 104 F.Supp.2d 1001, 1008 (C.D. Ill. 2000) (failing to disclose information on a background questionnaire is a legitimate non-discriminatory reason for removing an applicant from an eligibility list).

Lastly, under no circumstances was the military status of any of the Plaintiffs taken into account when removing them from the Firefighters Eligibility List. There is no evidence in the record to support this allegation. The record contains sufficient evidence warranting the removal of each Plaintiff for the reasons stated above.

## CONCLUSION

For the foregoing reasons the decision of the Commission to remove the Plaintiffs from the Firefighters Eligibility List should be affirmed by the Court.

Respectfully submitted:
**Springfield Civil Service Commission,
Larry Jones, Katherine Starks-Lawrence,
Henry Harms, Greg Akers, Bob Jasmon,
The City of Springfield, Illinois
and Fire Chief Ron Hasara,
Defendants.**

By: _____
    Assistant Corporation Counsel

Jenifer L. Johnson
Corporation Counsel
Frank Martinez
Assistant Corporation Counsel
Municipal Center East
300 E. Monroe Street, Room 313
Springfield, Illinois 62701
Telephone: (217) 789-2393
Facsimile: (217) 789-2397

16

IN THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
SANGAMON COUNTY, ILLINOIS

RANDY POORMAN,                           )
WILLIAM KALTENBACH,                      )
RICHARD RIEMANN,                         )
JOHN MEREDITH,                           )     CASE NO. 03 MR 158
MATTHEW VLAHOVICH,                       )
DAVID LAUB, AHREN COADY,                 )     AND CASE NO. 03 CH 172
LAKESHIA FOX-KIMMINS,                    )
and WILBUR DAY,                          )
                                         )
               Plaintiffs,               )
                                         )
                                         )
                                         )
SPRINGFIELD CIVIL SERVICE                )
COMMISSION, LARRY JONES,                 )
KATHERINE STARKS-LAWRENCE,               )
HENRY HARMS, GREG AKERS,                 )
BOB JASMON, THE CITY OF                  )
SPRINGFIELD, and FIRE CHIEF              )
RON HASARA,                              )
                                         )
               Defendants.               )

## AFFIDAVIT

I, Larry Jones, on oath, state:

1.    I am the former Chairman of the Springfield Civil Service Commission and an

      attorney licensed to practice law in the state of Illinois.

2.    I served on the Springfield Civil Service Commission from August 1995 until

      July of 2003.

3.    The Springfield Civil Service Commission has routinely removed applicants from

      the Firefighters Eligibility List who are found Unqualified to become firefighters

for not meeting the acceptable minimum psychological standards for public safety employment for the past six years.

4.  The Springfield Civil Service Commission does not possess the knowledge, skill, expertise or educational background in psychology to contradict the findings of Dr. Michael Campion.

5.  Therefore, the Springfield Civil Service Commission relies on the expertise of Dr. Michael Campion in administering and interpreting a battery of psychological tests and questionnaires given to firefighter applicants designed to evaluate an applicant on a variety of attitudes and behaviors that are important and necessary for success on the job as a firefighter.

**FURTHER AFFIANT SAITH NOT.**

Date: September 25, 2003

_Larry Jones_
Larry Jones

Sworn and subscribed to me this 25th day of September, 2003.

_Norma McGill Trepal_
Notary Public

```
┌──────────────────────────────────────┐
│           OFFICIAL SEAL              │
│     NORMA MC GILL TREPAL             │
│   NOTARY PUBLIC, STATE OF ILLINOIS   │
│  MY COMMISSION EXPIRES 11-13-2004    │
└──────────────────────────────────────┘
```

Jenifer L. Johnson
Corporation Counsel
Frank Martinez
Assistant Corporation Counsel
Room 313, Municipal Center East
800 East Monroe Street
Springfield, Illinois 62701-1680
Telephone: (217) 789-2393
Facsimile: (217) 789-2397

IN THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
SANGAMON COUNTY, ILLINOIS

RANDY POORMAN, WILLIAM                    )
KALTENBACH, RICHARD RIEMANN,              )
JOHN MEREDITH, MATTHEW                    )
VLAHOVICH, DAVID LAUB and                 )
AHREN COADY, LAKESHIA                     )
FOX-KIMMINS, and WILBUR DAY               )
                                          )
                    Plaintiffs,           )        Case No. 03-MR-158
                                          )
            v.                            )        and Case No. 03 CH 172
SPRINGFIELD CIVIL SERVICE                 )
COMMISSION and LARRY JONES,               )
KATHERINE STARKS-LAWRENCE,                )
HENRY HARMS, GREG AKERS, and              )
BOB JASMON and THE CITY OF                )
SPRINGFIELD and FIRE CHIEF RON            )
HASARA,                                   )
                                          )
                    Defendants.           )

PROOF OF SERVICE

The undersigned hereby certifies that on September 25, 2003, a copy of the foregoing **DEFENDANTS' MEMORANUM OF LAW IN OPPOSITION TO COMPLAINT IN ADMINISTRATIVE REVIEW** was served by mailing a copy of the same in the United States Mail at Springfield, Illinois, at or before 5:00 p.m., via regular first-class mail, postage fully prepaid, in a sealed envelope to:

Donald M. Craven, P.C.                    James P. Moody
1005 North Seventh Street                 Cavanaugh & O'Hara
Springfield, Illinois 62702               407 E. Adams
                                          Springfield, Illinois 62702

                                          _____
                                          Frank Martinez

Frank Martinez
Assistant Corporation Counsel
800 E. Monroe Street
Room 313, Municipal Center East
Springfield, Illinois 62701-1680
Telephone:    (217) 789-2393
Fax Number:   (217) 789-2397